STATE of Missouri, Respondent,

v.

Dempsey OWENS, Jr., Appellant.

No. 50686.

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Jeremiah D. Finnegan, Asst. Atty. Gen., Jefferson City, for respondent.

Richard J. Childress, St. Louis, for appellant.

BARRETT, Commissioner.

Dempsey Owens, Jr., with four prior felony convictions, has been found guilty of illegal possession of narcotics, 1.32 grams of heroin, and sentenced to ten years' imprisonment. RSMo 1959, §§ 195.020, 195.200, V.A.M.S. The transcript of the record shows that Dempsey was arraigned and entered a plea of not guilty on June 6, 1963. On the following day, June 7, the court finding upon examination of the defendant that he was an indigent appointed, without compensation, a distinguished professor of law to represent him in the trial of the cause. And in March 1964 upon conviction and after permitting him to appeal as a poor person and furnishing a free transcript of the record (RSMo 1959, § 485.100, V.A.M.S.) the court again appointed the same counsel to represent him upon his appeal to this court.

In October 1963, alleging an illegal arrest and a consequent illegal search and seizure in violation of the state and federal constitutions, counsel filed a motion to suppress "all evidence" obtained by two St. Louis police officers on May 21, 1963, the date of the offense and the day on which Dempsey was arrested. Simultaneously counsel filed a motion to dismiss the amended information, alleging as grounds that on May 21, 1963, Dempsey was taken before a judge of the St. Louis Court of Criminal Correction for a preliminary hearing and although an indigent and entitled to counsel, a right of which he was then unaware, the judge did not inform him of his rights. It was alleged that the preliminary was "a critical stage in the criminal proceeding" against him and that only with counsel at the preliminary could he secure "a fair and equal trial." Following this statement in counsel's plea on behalf of Dempsey it is asserted, since the statutes and rules of criminal procedure provide for the appointment of counsel upon arraignment (Criminal Rule 29.01, V.A.M.R.; RSMo 1959, § 545.820, V.A.M.S.) and because he was entitled to consult counsel after arrest and while in custody (Criminal Rule 29.05), and not having been furnished counsel upon the required preliminary hearing (Criminal Rules 23.03, 23.08; RSMo 1959, § 544.250, V.A.M.S.), that his rights guaranteed by both the state and federal constitutions, particularly the due process and equal protection provisions, had been infringed. On the following day, October 4, 1963, counsel filed a third motion for an "order of court taxing cost of depositions to the State of Missouri." In this sixteen-point motion it was alleged that he desired to take the depositions of the two arresting officers, patrolmen Lodl and Smith, and of Melvin Bingham, a third police officer, well acquainted with Dempsey, who appeared upon the scene of the arrest.

After a lengthy hearing, consisting of the testimony of the defendant and the three named police officers, the court overruled all three motions and this action by the court is the basis of the assignments of error now made upon this appeal. It should first be noted in passing, however, that after the motions were overruled on October 21, 1963, and the case proceeded to trial on November 4, 1963, except for expert testimony as to the heroin, the state's witnesses were the three policemen whose testimony before the jury was substantially the same as they testified upon the motions before the court. The defendant offered no evidence upon the principal trial and as indicated the jury found him guilty and since he had prior felony convictions the court fixed his punishment. RSMo 1959, § 556.280, V.A.M.S. It may also be interpolated that officer Smith did not testify at the preliminary hearing. Officer Lodl did testify at the preliminary and in response to defense counsel's inquiry said that he gave the same evidence at the preliminary, "I testified as to what I had seen," as he gave upon the motion to suppress.

Both upon the hearing of the motion to suppress evidence and upon the trial of the cause the facts as the trial judge or the jury could reasonably find them were that on May 21, 1963, about 1:15 in the

morning uniformed police officers Lodl and Smith were cruising in a marked police car north on Hodiamont at Etzel near a National Food Store. The parking lot to the rear of the food store was "illuminated" by a night light at the rear of the building, a lighted icehouse and a street light and except for the police and Dempsey there was no other person or traffic on the street or in the neighborhood. There was an automobile parked at the rear of the store. Officer Smith was driving and Lodl said that he saw Dempsey "walking cater-cornered" across the parking lot towards the automobile and he told Smith to stop. As they pulled into the curb he "observed the subject throw a shiny object to the ground." Smith stopped the police car and both officers alighted, Lodl to pick up the object "and see what it was" (he thought it was a gun), and Smith "to stop that man." As Lodl walked towards the shiny object he "observed the subject drop a piece of paper to the ground, and my partner picked it up and handed it to me, and I opened it and it contained twenty-two capsules containing a white powder." The paper Smith picked up was a "Double-Mint Chewing Gum wrapper" and inside the wrapper there was a cigarette paper and the "white powdery substance" turned out to contain 1.32 grams of heroin. And the shiny object turned out to be a loaded .32 caliber pistol which Dempsey said "was his too." Lodl asked Dempsey where he got the package of powder, "at first he denied it and then finally said, 'you got me good this time.'" Lodl said that there was no reason for stopping the police car other than seeing Dempsey throw the "shiny object." Lodl said, "I seen Mr. Owens drop the package, and my partner reached down and picked it up, and he turned around and handed it to me, and I opened it, and during this time there was no conversation as yet taking place." Smith said that after dropping the paper wrapper Dempsey "stopped on his own accord to face the officer" (Lodl). Lodl testified that after he opened the package handed to him by Smith "Then I placed him (Dempsey) under arrest for Possession of Narcotics. * * * Well, I told the man he was under arrest for Possession of Narcotics, and then I walked on back and picked up this revolver." Lodl said that he saw Dempsey throw the chewing gum wrapper, he dropped it, Lodl said, not more than an inch from his right foot, and there was no search of his person until "after he told me he had that bottle in his coat. I hadn't search him up to that point." And, incidentally, the bottle contained amphetamine hydrochloride, but the appellant was not charged with the possession of this particular drug.

The circumstances as they were made to appear upon the appellant's motion, as well as upon the trial, have been set forth in elaborate detail because they completely refute as a matter of fact the foundation of his claim of an invasion of constitutional rights by reason of an illegal arrest and a consequent unlawful search and seizure. And in these particular circumstances, and as the trial court found the facts in his memorandum, it is not necessary to factually distinguish the cases relied on by the appellant (State v. Cuezze, Mo., 249 S.W.2d 373; State v. Morice, Mo., 79 S.W.2d 741) or to examine the asserted constitutional guaranties involved in an illegal arrest and a consequent unlawful search and seizure. In the principal case relied on, Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688, it was alternatively observed, depending on the fact, that "(i)f the petitioner thereafter voluntarily revealed the package of narcotics to the officers' view, a lawful arrest could then have been supported by their reasonable cause to believe that a felony was being committed in their presence." Almost identical circumstances and asserted constitutional questions were involved in State v. Cantrell, Mo., 310 S.W.2d 866, (a burglary and larceny case) and State v. Harris, Mo. App., 325 S.W.2d 352, the latter a prosecution for possession of lottery tickets. In both cases the evidence was detailed and the statutes governing police officers in St. Louis examined (RSMo 1959, § 84.090(10),

V.A.M.S.), and it was held that the arrests were lawful and "where papers and effects seized are open to the eye and hand" there has been "no case of search and seizure violative of defendant's right to be secure in his person under Article 1, Section 15, of the Constitution is presented." In view of the facts as they have been detailed and were found there is no point in examining into the constitutional rights alleged to have been infringed; the arrest was lawful and certainly as to the heroin, the only offense involved here, there was no invasion of the right of "the people" to "be secure in their persons * * * from unreasonable searches and seizures" (Const.Mo. Art. 1, Sec. 15, V.A.M.S.) or by the same token an infringement by the State of Missouri of any right protected by the Fourteenth Amendment to the Constitution of the United States.

■ Furthermore, it may be noted at this juncture, the circumstances as testified to by the police officers sustain the charge and jury finding of unlawful possession of a narcotic drug. State v. Worley, Mo., 375 S.W.2d 44.

■ Also, setting forth in detail the circumstances of Dempsey's arrest and the testimony adduced by him upon his motion to suppress evidence serves to refute if not destroy his second point that the trial court's denial of his motion for an order "taxing cost of depositions to the State of Missouri" was likewise an infringement of his state and federal constitutional rights. There is of course a right on the part of both the state, under certain limitations, and defendant in a criminal case to take depositions (Const.Mo. Art. 1, Sec. 18(b); RSMo 1959, § 545.400, V.A.M.S.; Criminal Rule 25.10) but there is no provision for free depositions. And "at least under the circumstances shown in this case, certainly is not essential to the minimum requirements of due process under either the Missouri or United States Constitution." State v. Aubuchon, Mo., 381 S.W. 2d 807, 812-813. It may be that the mere

citation of this case is sufficient to dispose of this point but, as indicated, in his motion the appellant asked to take the depositions of officers Smith, Lodl and Bingham, alleging merely that they were endorsed as witnesses and possessed "knowledge and evidence material and relevant to the defense of defendant in this cause." At the conclusion of the presentation of the evidence on the motion to suppress evidence on October 11, 1963, the court observed to counsel, "I think you have the deposition now, do you not? I'm very serious. I don't know what more you could ask." But defense counsel insisted that he did not have "a transcript of this," although he did concede that the testimony of Smith, Lodl and Bingham on the motion "covered the same territory" depositions would have covered. The court's memorandum overruling the motions was filed October 21, 1963, and the case was set for trial on November 4. There was no request for a continuance and upon the trial there was no claim of surprise or of unfair advantage to the state and the police officers all testified to substantially the same circumstances they had related in greater detail on the appellant's motion to suppress. There is no attempt here to demonstrate in any manner that Dempsey Owen's right to a fair trial has been infringed; the mere abstraction is asserted that because his motion to tax costs for depositions was overruled his constitutional rights have been invaded, but the bare assertion has no basis in reality or fact and upon this record there was no manifestly prejudicial error in the court's overruling this particular motion. State v. Aubuchon, supra.

■ In this background the third and most vigorously urged assignment of error has to do with the overruling of the appellant's motion to dismiss the information for the reason that he was not represented by counsel at the preliminary hearing. In his motion it was alleged that he was an indigent and unable to secure counsel, that he was not aware of his right to court-appointed counsel at his preliminary hearing

and that he was not advised of his right by the judge of the court of criminal corrections, and he alleged that "the preliminary examination is a critical stage in the criminal proceeding." He points to the fact that under Missouri law he had the right to consult with counsel after his arrest and while in custody (Criminal Rule 29.05), that as an indigent charged with a felony he was entitled to the appointment of counsel upon his arraignment in the circuit court (RSMo 1959, § 545.820, V.A.M.S.; Criminal Rule 29.01) and finally asserts that the lack of counsel at his preliminary hearing infringed his state and federally protected rights to due process and equal protection. Const. Mo. Art. 1, Secs. 2, 18(a); Fourteenth Amendment Constitution of the United States.

■ The point briefed and argued is that the preliminary hearing is a critical stage in the criminal process in Missouri (RSMo 1959, § 544.250, V.A.M.S.; Criminal Rules 23.02–23.03, 23.08) and that unless understandingly and intelligently waived (Walton v. State of Arkansas, 371 U.S. 28, 83 S.Ct. 9, 9 L.Ed.2d 9) the mere failure to appoint counsel at that stage in the criminal prosecution is an infringement of the indicated constitutional rights and guaranties necessitating, he urges, that his conviction be set aside. In support of his position the appellant cites a list of recent and very well known decisions of the Supreme Court of the United States, including for example Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, and Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. But it is not necessary upon this record to analyze these cases in detail and distinguish them factually or otherwise, that has been done on three recent occasions and it is sufficient here to say that there is no basic conflict in the decisions of this court and the decisions of the Supreme Court of the United States. Nevertheless, in the most recent decision it was held that the mere failure to appoint counsel at the preliminary

hearing in a non-capital felony case standing alone did not violate either the state or federal constitutions. State v. Phelps, Mo., 384 S.W.2d 616. Admittedly a preliminary hearing may be "a critical stage" and what happens there may in some situations and some circumstances, not involved here, infringe fundamental rights, but a preliminary hearing in Missouri "is not a trial of the accused for the offense alleged in the complaint but merely an inquiry to determine if there is probable cause to believe that a felony has been committed and that the accused is the offender so that he may be bound over and formally charged in the circuit court or discharged if probable cause is not found." State v. Turner, Mo., 353 S.W.2d 602, 604. In the Phelps and Turner cases and in State v. Gagallarritti, Mo., 377 S.W.2d 298, as indicated, the decisions of the Supreme Court of the United States down to December 1964 were examined and their determinative and distinguishing factors noted and it is only necessary here to briefly examine the cases since that date in the light of this record.

■ Dempsey, admittedly, was not represented by counsel but upon the record here, aside from the fact that there was a preliminary hearing before a judge of the criminal court of corrections (RSMo 1959, § 479.090, V.A.M.S.) and that he was "bound over" or held "to answer in the court having jurisdiction of the offense" (Criminal Rule 23.08), the only fact made to appear was from the testimony of Officer Lodl adduced by the appellant upon the motion to dismiss the information. From that testimony it plainly appears that upon the preliminary hearing Lodl was the only witness called and he "testified as to what I had seen" which as previously indicated was sufficient to establish probable cause that Dempsey had committed a felony. State v. Turner, supra. According to this record the appellant Dempsey Owens did not testify either upon the preliminary or in this trial and there is no claim that he was requested to give evidence or make a statement or that he was there imposed upon in any manner.

There is no allegation here and certainly no fact or circumstance in the record from which there is a possible inference that by reason of the preliminary hearing the state either sought or gained the slightest advantage or that there was any overreaching. In short, again the appellant does not point to the record and attempt to demonstrate the slightest prejudice or infringement of his right to a fair trial in the circuit court resulting from his lack of counsel at the preliminary hearing. As with the other asserted invasions of his fundamental rights, the appellant relies on a mere technical failure to provide counsel and is thus in the position of asserting mere theoretical rights and invasions, in a vacuum so to speak, when of course the courts are necessarily concerned with reality and the facts and circumstances of the particular case.

■ In the recent case of Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, proceedings at a preliminary in Texas, which differs materially from a preliminary hearing in Missouri, resulted in a denial of the fundamental right of confrontation of witnesses and consequently an infringement of the Sixth and Fourteenth Amendments. In Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the defendant's lawyer was denied access to his client and thereafter an incriminating statement was obtained and its use upon his trial infringed the Sixth and Fourteenth Amendments. But there has been no use here of unfairly obtained statements or documents. Compare: Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. While the case may have been modified in other respects, Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, validly applicable here is the statement that "state refusal of [an accused's] request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits, * * * but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial

with an absence of 'that fundamental fairness essential to the very concept of justice.'" As to the implied if not direct claim that the mere failure to appoint counsel at a preliminary hearing constitutes a prejudicial infringement of constitutional rights within the meaning of the recent decisions of the Supreme Court of the United States, the United States Court of Appeals, Fourth Circuit, in DeToro v. Pepersack, 332 F.2d 341, certiorari denied, 379 U.S. 909, 85 S. Ct. 198, 13 L.Ed.2d 181 and a United States District Court in United States ex rel. Parker v. Myers, 233 F.Supp. 563, have summarized the matter in this appropriate language:

"In our view, Hamilton and White teach that an accused is denied rights afforded him under the sixth amendment when he is subjected to an arraignment or to a preliminary hearing without the assistance of counsel, where events transpire that are likely to prejudice his ensuing trial. The Court, in each case, refused to speculate as to whether in fact prejudice actually accrued.

"Thus, the thrust of Powell's admonition that an accused has a right to counsel 'at every step in the proceedings against him,' as borne out by subsequent decisions, including Hamilton and White, seems to be that if the effectiveness of legal assistance ultimately furnished an accused is likely to be prejudiced by its prior denial, the earlier period may be deemed a critical stage in the judicial process and a conviction obtained in such circumstances is rendered invalid. We find nothing in the Supreme Court decisions, however, that would permit us to extend the duty of the State to appoint counsel in proceedings where even the likelihood of later prejudice arising from the failure to appoint is absent."

These two cases and these principles are peculiarly applicable to this record and the appellant's abstract, theoretical claim of an

unfair and prejudicial infringement of fundamental rights.

The information in the language of the statute appropriately charges the offense of illegal possession of narcotics (State v. Worley, supra; State v. Virdure, Mo., 371 S.W.2d 196), the punishment was within the prescribed limits (RSMo 1959, §§ 195.200, 556.280, V.A.M.S.), there was allocution and compliance with all the required formalities and there are no errors upon the record before the court (Criminal Rule 28.02) and for the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.