STATE of Missouri, Respondent,

v.

Paul Earvin JEFFERSON, Appellant.

No. 50843.

Supreme Court of Missouri,
Division No. 2.

July 12, 1965.

**886**

**STORCKMAN, Judge.**

The defendant Paul Earvin Jefferson was charged, tried, and convicted of the illegal possession of amphetamine, a stimulant drug. Section 195.270, RSMo 1963, Cum. Supp., V.A.M.S. The court also found that he had been previously convicted on four occasions as charged pursuant to the Habitual Criminal Act. Section 556.280, RSMo 1959, V.A.M.S. The defendant's motion for new trial was overruled and he was sentenced to a three-year term of imprisonment.

The defendant was represented at the trial by able court-appointed counsel and is represented here by the same attorney. Defendant's brief presents three points: (1) that the court erred in refusing to sustain the defendant's motion to suppress certain evidence alleged to have been illegally seized in violation of the defendant's constitutional rights; (2) that the state failed to prove that the defendant had possession of the drug within the meaning of the law; and (3) that the state failed to prove that the defendant had in his possession a drug which had an exciting effect on the central nervous system of a human or an animal as alleged in the information.

On December 29, 1963, at about 10 p.m., four police officers went to a house located at 4144 Fairfax in the City of St. Louis accompanied by Cleveland Owens who had been arrested on a charge of stealing three items valued at less than $50. In the course of questioning, Cleveland Owens had told the police that he had sold one of the stolen articles to a Russell Yates at the Fairfax address for a $5 package of amphetamine. In response to a knock by Owens, the defendant came to the door and upon seeing the police officers retreated into the house followed by the officers. The defendant was arrested along with Russell Yates and two other persons. The police seized a syringe and hypodermic needle seen in the right hand of the defendant and a rag or piece of cloth tied around the upper part of defendant's left arm. The defendant's

Norman H. Anderson, Atty. Gen., Jefferson City, John H. Denman, Asst. Atty. Gen., for respondent.

James V. Gallen, St. Louis, for appellant.

motion to suppress these articles and exclude them from evidence was overruled. The fluid in the syringe was analyzed by a chemist employed by the Metropolitan Police Department and was found to contain amphetamine.

The defendant's first assignment is that the court erred in refusing to sustain his motion to suppress the syringe, needle, and armband as evidence because the articles were obtained by an "unlawful arrest, search and seizure in that no reasonable and probable cause existed for such arrest, search and seizure and no search warrant had issued" contrary to §§ 15 and 19 of Art. 1 of the Constitution of Missouri 1945, V.A.M.S., and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

The legality of the seizure of the articles sought to be suppressed depends largely on the testimony of Detective Richard A. Miller. When Officer Miller and the others reached 4144 Fairfax, Patrolman Robert Beeks was detailed to guard the front door and the others went to a door on the east side next to which was a porch about ten by twelve feet. Cleveland Owens was directed to a position in front of the door and Officer Miller stood to his right. Detective James A. Whealan was behind them standing on the porch steps and Sergeant Gay Carraway was behind Whealan.

Cleveland Owens knocked on the door and one of three small apertures or windows in the door was opened by the defendant. The door was then opened. The door led into a small hallway or area from which there was a door leading south into a middle room of the house. Detective Miller testified that when the defendant opened the outside door, he was wearing a vest and his left shirt sleeve was rolled up and a rag or armband was tied around the muscle of his upper left arm. In his right hand the defendant held a syringe with a hypodermic needle attached. When the defendant saw that Owens was accompanied

by others, he attempted to close the outside door. Detective Miller tried to identify those present as police officers, but all he was able to call out was "Police" before he had to push against the outside door to prevent its being closed. The defendant went through another door into the middle room and attempted to slam that door behind him, but Detective Miller followed him closely and also prevented the inner door from being closed. In the middle room Detective Miller struggled with the defendant who put his hands behind him and Officer Miller saw the defendant drop the syringe and hypodermic needle to the floor. After Detective Miller subdued and handcuffed the defendant, he took possession of the syringe, hypodermic needle and armband which were introduced into evidence.

The other police officers followed Officer Miller into the house and corroborated the testimony of Detective Miller except they were not in a position to see the syringe, hypodermic needle and armband while they were in the defendant's possession. The defendant questions whether there was sufficient light at the outside door where the defendant was standing for Officer Miller to see the rag on the defendant's arm and the syringe and hypodermic needle in his hand. Officer Miller testified that when the defendant opened the door the light from the inside and from the streetlights outside were sufficient to enable him to see the defendant clearly. It is a reasonable inference from all the evidence that the outside lighting was sufficient for the defendant to recognize Cleveland Owens standing directly in front of the door when he looked through the peephole in the door and sufficient to see the accompanying officers when he opened the door, and that this unexpected sight caused him to hurry back into the middle room and attempt to close the doors behind him. The positive evidence of Officer Miller and other reasonable inferences constitute substantial evidence that the defendant did appear at the door with the band on his left arm and the syringe and

hypodermic needle in his right hand and was seen by Officer Miller in this condition. The essential question for determination is whether the arrest of the defendant was lawful in these particular circumstances.

An arrest by a police officer of the City of St. Louis without a warrant is authorized by law when the police officer has reasonable grounds to believe that an offense against the law has been committed by the person arrested. Section 84.090, RS Mo 1959, V.A.M.S.; State v. Edmonson, Mo., 371 S.W.2d 273, 276[4]; State v. Vollmar, Mo., 389 S.W.2d 20, 24[4]; City of St. Louis v. Washington, Mo.App., 223 S.W.2d 858, 862[1]. It is further well settled that when a person has been lawfully arrested, a search without a warrant may be made of the person and of the premises where he was arrested. State v. Vollmar, Mo., 389 S.W.2d 20, 25[7]; State v. Berstein, Mo., 372 S.W.2d 57, 59[4].

Where the articles sought to be suppressed were in plain sight of the arresting officer, were dropped or thrown away by the person arrested, and were picked up by the officers, the articles are admissible in evidence over an objection that they were seized as the result of an unlawful search. State v. Owens, Mo., 391 S.W.2d 248 (No. 50,686, decided June 14, 1965); State v. Humphrey, 358 Mo. 904, 217 S.W.2d 551, 553[6]; State v. Harris, Mo.App., 325 S.W.2d 352, 356[4]. See also State v. Engberg, Mo., 377 S.W.2d 282, 285 [5, 6]. As previously stated, the essential question is whether the arrest was lawful. In this connection, both sides have referred us to numerous federal decisions bearing on the question. We have examined all of them but find it unnecessary to review them in the opinion since the Missouri and federal constitutional standards are not inconsistent. State v. Owens, Mo., 391 S.W. 2d 248 (No. 50,686, decided June 14, 1965).

What constitutes reasonable grounds to believe that an offense has been committed by the person arrested is incapable of an exact definition beyond saying that the officer must not act arbitrarily, must exercise his discretion in a legal manner, must use all reasonable means to prevent mistakes and must be actuated by such motives as would influence a reasonable man acting in good faith. State v. Cantrell, Mo., 310 S.W.2d 866, 869[6]; Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 225[2, 3], 228[10]; 13 L.Ed.2d 142. See generally 6 C.J.S. Arrest § 6d(1), p. 596.

The defendant seeks to isolate and separately invalidate component parts of the transaction, but the reasonableness of the arrest must be determined on all the related circumstances. United States v. Clark, 19 F.Supp. 972, 974[4]. Chapter 195 of the Missouri statutes, V.A.M.S. is a comprehensive regulation of harmful drugs, including narcotics, barbiturates and stimulants of which amphetamine is one. The police officers including Detective Miller had information that amphetamine could be obtained at the Fairfax address and went there to interrogate Russell Yates who was reported to have sold some of the drug to Cleveland Owens. It is common knowledge that drug addicts use hypodermic needles to inject prohibited drugs into their bodies. When the defendant answered the door, his appearance was that he was about to give himself a "shot" in the left arm when interrupted by Owens' knock. This situation was clearly apparent to Officer Miller when he called out "Police" and the defendant fled back into the house. The fact that the defendant attempted to run away may be considered in determining whether he was engaged in a lawful undertaking. State v. Harris, Mo.App., 325 S.W.2d 352, 358[14–16]. The defendant's further effort to conceal the syringe and needle behind him and finally dropping them to the floor are additional incriminating circumstances

■ The defendant contends he was lawfully on the premises although he was not a resident there and had a "standing to invoke the privacy of the premises by a Motion to Suppress the use as evidence of property seized in the search of the premises." This overlooks the fact that the syringe, needle and armband were in plain view and were not discovered by a search of the premises. We conclude that Officer Miller had reasonable grounds to believe that the defendant was engaged in the commission of an offense in that he was unlawfully in possession of amphetamine. The arrest and the seizure of the syringe, its contents, the hypodermic needle, and the armband was lawful and the trial court did not err in overruling the motion to suppress and admitting the articles in evidence. State v. Owens, Mo., 391 S.W.2d 248 (No. 50,686, decided June 14, 1965).

■ Next the defendant contends that the state failed to prove that he had possession of a stimulant drug within the meaning of the law "to the extent of having active control over and management of the drug, Amphetamine, and not a passing or fleeting control." In argument the defendant states that the state's evidence merely indicated "that the needle and syringe with its contents were in the Appellant's right hand for the purpose only of injecting the contents into his person." In support of his contention, the defendant cites State v. Lane, 221 Mo.App. 148, 297 S.W. 708, State v. Huff, 317 Mo. 299, 296 S.W. 121, State v. Nelson, Mo.App., 21 S.W.2d 190, and 48 C.J.S. Intoxicating Liquors § 222, page 353. These cases and text all deal with intoxicating liquor in situations where the possession was constructive or where the evidence showed or tended to show that the liquor belonged to another and the defendant had possession of the bottle only long enough to take a drink. They are not controlling in this situation.

The statute in question here is directed against the "possession, sale, distribution, or transfer" of any of the prohibited drugs including amphetamine. Section 195.240, RS Mo 1959, V.A.M.S. In Webster's Third New International Dictionary, possession is defined as "the act or condition of having in or taking into one's control or holding at one's disposal". The defendant in the instant case had the entire possession. It was actual possession and not constructive possession. The drug in his hand was under his control and was subject to his disposal in that the evidence tends to show that he was about to inject the drug into his body. We have no doubt that the sort of possession shown by the evidence was intended to be included in and prohibited by the statute. State v. Owens, Mo., 391 S.W.2d 248, (No. 50,686, decided June 14, 1965). The court did not err in failing to enter judgment of acquittal on this ground.

■ The defendant's final contention is that the state failed to prove that the defendant had in his possession a drug, amphetamine, which "has an exciting effect on the central nervous system of a human or animal". He cites only the statute, § 195.240. Mr. John Klosterman, a chemist for the police department, testified that his chemical analysis revealed the presence of amphetamine in a water solution, but that he made no analysis to determine the quantity or concentration of the drug and, therefore, could not testify to the stimulating effect of the solution. The essence of the defendant's contention as revealed in his written argument is that the state must establish the presence of the drug in sufficient concentration to stimulate the nervous system in order to support the conviction.

With certain exceptions not material here, § 195.240 renders unlawful the possession "of any drug which is designated by the division of health to be a barbiturate or stimulant". Section 195.220 defines "Stimulant" to mean "amphetamine or any of its derivatives which have an exciting effect on the central nervous system of a human or

animal." Section 195.230 requires the division of health to prepare and file with the secretary of state "a list of all drugs falling within the purview of the terms barbiturate or stimulant." A list so prepared and filed was introduced in evidence by the state. The exhibit designated amphetamine as a stimulant drug. Thus, the list of the division of health as well as § 195.220 specifically designates amphetamine as a stimulant, the possession of which is rendered unlawful by § 195.240.

The term "which have an exciting effect on the central nervous system of a human or animal" modifies and is descriptive of the essential nature of the prohibited derivatives of amphetamine. It is not the legislative intent that this phrase prescribe the quantity or amount of amphetamine or its derivatives that must be possessed before the possession becomes unlawful. The statute does not specify any permissible quantity or amount. We conclude that the possession of any amount, even a modicum, of amphetamine is within the prohibition of the statute. This can be the only reasonable interpretation in view of evil which the general assembly seeks to abate. See State v. Lunfrunk, Mo.App., 279 S.W. 733, 736[9]; Mickens v. People, 148 Colo. 237, 365 P.2d 679, 681[3]; Peachie v. State, 203 Md. 239, 100 A.2d 1, 2[1]; Blaylock v. State, 171 Tex.Cr.R. 665, 352 S.W.2d 727, 728; Anno.: 91 A.L.R.2d 810, 829, § 7. The state was not required to prove that the quantity of amphetamine in the solution was sufficient to have an exciting effect on the central nervous system of a human or an animal.

We have examined parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08, V.A.M.R., and find them to be proper in form and free from error. Accordingly the judgment is affirmed.

All of the Judges concur.