STATE of Missouri, Respondent,

v.

Ernest McCLAIN, Appellant.

No. 51756.

Supreme Court of Missouri,
Division No. 2.

June 13, 1966.

As Modified on Court's Own Motion and Motions to Transfer and for Rehearing Denied July 11, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Joseph S. Boland, Sp. Asst. Atty. Gen., Clayton, for respondent.

Harry J. Stadin, J. Raymond Dyer, St. Louis, for appellant.

EAGER, Presiding Judge.

Defendant was found guilty by a jury of first degree robbery and, upon a finding of prior felony convictions by the court, he was sentenced to a term of ten years' imprisonment. He was ably represented at the trial, and here, by two appointed attorneys. A lengthy and detailed motion for a new trial was overruled by the lapse of 90 days, in accordance with Criminal Rule 27.20, and the defendant has appealed as a poor person, with transcript furnished gratuitously. Counsel assign as error the denial of defendant's motions for acquittal, but not on the insufficiency of the evidence. We shall not, therefore, state the evidence in any considerable detail.

The evidence at the trial developed the following facts. Gilbert Powers, age 65, conducted a small confectionery store at 1300 South 9th in the City of St. Louis. The business was owned by Adie Goskie, who divided the profits with Mr. Powers. Mrs. Powers ran the store during certain hours. On March 8, 1965, Powers was in charge of the store when at "approximately twelve o'clock" a Negro man came in, went to the "dairy case" and took out a 12-ounce bottle of Pepsi-Cola, brought it over and set it on the counter near the cash register; at that point he dropped some change and stooped down; Powers walked a few steps, apparently toward the man, then turned "to walk back"; as he turned, the man hit him on the head with the unopened bottle, shattering the glass into many pieces. Powers further testified: that the man was standing practically against the counter and within reach of the cash register; that he saw the man reach over the counter, go into the cash register and take the bills which were there, although he did not actually see him "press the key"; when the man left,

the cash register was open whereas it had previously been closed, and, upon checking it later, the money was found to be about $18 short. Powers' head was cut and he testified that the blow "kind of shocked me" (obviously an understatement). The police were called, Powers went to the hospital for only a brief emergency treatment and returned. On March 11, 1965, defendant was brought to the store by two detectives who had arrested him upon suspicion of this robbery. When they came in, Powers spoke first and said, "Well, I see you have got my boy." Powers positively identified the defendant as the robber, then, at the preliminary hearing, and at the trial. He testified that he had seen him in the store perhaps eight to twelve times previously during a period of two or three months, and that he had seen him twice previously on that same morning; once he had come in and bought a "coke," but had gone out; the other time he had walked by and looked in. On both occasions there was a customer in the store. Powers testified that the topcoat which defendant was wearing when arrested was "similar" to the one the robber was wearing, but that he thought the hat the robber was wearing was "darker" than the one defendant wore when arrested. Powers described the robber to the police as thin, about 35 years of age, and about five feet five or six inches tall; he also described the clothing the man was wearing. The defendant was arrested on suspicion of the robbery, largely or entirely from the descriptions given. A Mrs. Cochran who lived across the street from the store saw a man running about 8 feet from the window where she was sitting, immediately after the robbery; she gave the police a general description, including a description of the clothing he was wearing, but she did not see his face.

Defendant denied participation in the robbery when arrested, when taken to Mr. Powers, and at the trial. When confronted with Mr. Powers, he called the latter by name but immediately stated that he had an "alibi," although he had not yet been

told what time of the day the robbery had occurred. In the State's case, Robert Lenzini, United States Probation Officer, testified that on March 5, 1965, he had left word at defendant's home for him to report on March 8, 1965; that defendant had come in at 9:50 a. m., but Lenzini was not there and he left; that defendant came back some time after 1:00 p. m. and talked with the witness; that defendant was then under his jurisdiction. Defendant's grandmother and sister testified: that on March 8, 1965, defendant left the home in the morning to go to the Parole Office; that he came back about 10:15 and stayed there until 12:30; that the grandmother then gave him forty-five cents for his bus fare and he again left for the Parole Office. The defendant testified in his own behalf. He stated that he arrived at the Parole Office at 9:30 or 9:35 a. m. on March 8, found that Mr. Lenzini was not there and he went back home; that he again left home about 12:30 for the Parole Office, after his grandmother had given him the forty-five cents for bus fare. He further testified: that he knew Mr. Powers when he had a store on South Broadway and was a customer, that he had been in Powers' present store twice, that he was not at the store on March 8, 1965, took no money, hit no one with a bottle, was not even in South St. Louis on that day, and that he was five feet ten inches tall. On cross-examination he admitted three convictions in Illinois for the possession of narcotics, one in Missouri for the possession, stealing and transportation of narcotics, one stealing and one forgery conviction in Illinois, and one stealing conviction in Missouri. When the defendant put on the coat and hat that he was wearing when arrested and was thus presented to Mrs. Cochran, she said: "I couldn't say. But it looks the same except the hat. Now, the hat seemed to be darker."

The points made here by defendant's counsel are, in substance: (1) that defendant was deprived of his right to due process and to a fair trial because he was deprived of counsel at his preliminary hearing, that

his motions for acquittal and for a new trial should have been sustained for that reason, and he claims prejudice thereby; (2) that the trial court erred in considering that the preliminary hearing was merely an inquiry to determine probable cause, since it really went "to the question of whether or not defendant was the offender," and constituted a critical stage of the proceedings; also, that defendant was prejudiced by the erroneous testimony of an officer at the preliminary hearing as to the time, place and date of defendant's arrest; (3) that the court erred in allowing the State's attorney to cross-examine defendant concerning the two prior felony convictions alleged in the information, he having already admitted them outside the presence of the jury, and also concerning five other convictions, not included; (4) that the court erred in admitting a 12-ounce bottle of Pepsi-Cola in evidence, it not being the bottle in question, not the "best evidence" and not relevant to any disputed issue.

■ Defendant's Points 1 and 2 may be combined in our discussion. On the first point, namely the lack of counsel at preliminary, counsel cite White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, and State v. Owens, Mo., 391 S.W.2d 248; then, as a somewhat novel approach, they attach a copy of the July 6, 1965, "Defender Newsletter" of the National Legal Aid and Defender Association, as their brief on the point. That publication cites and discusses various and sundry cases, State and Federal, pro and con, on the right to counsel at preliminary hearing. We do not propose to review all those cases here; we shall mention three. In Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, the court held that a defendant was entitled to the appointment (or selection) of counsel a sufficient time in advance of trial to permit effective preparation and effective aid at the trial. In the present case trial counsel was appointed on April 7, 1965, and the trial commenced on June 2, 1965. The issues were very simple and we find

no impingement upon that requirement. We mention also the cases of Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193. We have previously discussed those cases at length and have held specifically that the mere lack of counsel at a preliminary hearing held under the Missouri practice is not a deprivation of due process or of any other constitutionally protected right. State v. Engberg, Mo., 391 S.W.2d 868; State v. Phelps, Mo., 384 S.W.2d 616; State v. Gagallarritti, Mo., 377 S.W.2d 298; State v. Worley, Mo., 383 S.W.2d 529; State v. Turner, Mo., 353 S.W.2d 602; State v. Small, Mo., 386 S.W.2d 379; State v. McMillian, Mo., 383 S.W.2d 721. Counsel seem to rely upon a statement made in the opinion of State v. Owens, Mo., 391 S.W.2d 248, 253, to the effect that a preliminary hearing "may be 'a critical stage' and what happens there may in some situations and some circumstances, not involved here, infringe fundamental rights, * * *." But that statement was immediately followed by these further statements: "* * * but a preliminary hearing in Missouri 'is not a trial of the accused for the offense alleged in the complaint but merely an inquiry to determine if there is probable cause to believe that a felony has been committed and that the accused is the offender so that he may be bound over and formally charged in the circuit court or discharged if probable cause is not found.' State v. Turner, Mo., 353 S.W.2d 602, 604. In the Phelps and Turner cases and in State v. Gagallarritti, Mo., 377 S.W.2d 298, as indicated, the decisions of the Supreme Court of the United States down to December 1964 were examined and their determinative and distinguishing factors noted and it is only necessary here to briefly examine the cases since that date in the light of this record." The statement relied upon, as quoted above, apparently referred to the practice existing in other jurisdictions, such as Maryland, or to exaggerated situations where the state had "overreached" a defendant, if such is possible under our practice. The statement certainly should not be considered as an attempt to alter the line of decisions previously and concurrently (Engberg) adopted by this court.

Counsel necessarily claim, in view of our prior decisions, that the defendant was prejudiced at his trial by the lack of counsel at the preliminary hearing. That claim is wholly unfounded. A transcript of that hearing appears in the present record, and defendant's counsel were furnished with a copy of the transcript prior to trial, an unusual but perhaps commendable procedure. Counsel rely upon certain discrepancies between the testimony given at the preliminary hearing and that at the trial. For instance, one officer testified at the preliminary that defendant was arrested on March 8, at about 1:00 p. m. instead of March 11; Mrs. Cochran, the woman who lived across the street, was not called as a witness at the preliminary; and that Mr. Powers, the victim of the robbery, fixed the date of the robbery in his testimony at the preliminary as March 19, instead of March 8; that he also testified there that he dropped some change on the floor and stooped, whereas at the trial he testified that the defendant did so; and also certain claimed differences in Mr. Powers' observations of the manner in which defendant got the money from the cash register, which latter were and are wholly inconsequential. Counsel say that the stated difference in the date of arrest tended to implicate defendant by putting him in the neighborhood of the crime shortly after it occurred. The ultimate thrust of all this argument is to the effect that defendant, with counsel, could have cross-examined and discredited Mr. Powers and the officer, that defendant would have testified himself, that he would have produced his alibi witnesses, that he might have produced Mrs. Cochran, whose identification of defendant was less certain than that of Powers, and that he *might* thereby have persuaded the Judge of the Court of Criminal Corrections to find that there was no probable cause to believe that defendant was the one who committed the robbery.

The positive identification of the defendant by Mr. Powers was, in and of itself, a sufficient ground for a finding of probable cause. The speculations of counsel, as outlined, are wholly insubstantial and the facts thus relied on could not possibly be held to have constituted legal prejudice. The discrepancies in testimony were all corrected at the trial and defendant's counsel had the added advantage of cross-examining the witnesses *there from the transcript* of their testimony at the preliminary. If the discrepancies made any difference, which we doubt, they would seem to have worked to the defendant's *advantage* in the trial. The Court of Criminal Corrections did not convict him,—the jury did, after having heard a full comparison of all evidence so far as desired by the defendant. We note here also that defendant's counsel had in his possession at the trial an apparently complete copy of the police reports on the robbery. The defendant was in nowise deprived of any constitutional rights, and Points 1 and 2 are denied. We note further that, while we do not rule the contentions upon that ground, there is authority to the effect that any complaint concerning a preliminary hearing or the lack of one should be raised by pre-trial motion. State v. Turner, supra; State v. Owens, supra. See, also, State v. Richardson, Mo., 347 S.W.2d 165; State v. McMillian, Mo., 383 S.W.2d 721. That practice was not followed here.

██ The next point made is that the court erred in permitting the defendant to be cross-examined concerning his prior felony convictions, particularly since he had admitted, outside the presence of the jury, the two which were contained in the information in support of the Second Offender charge. No objection whatever was made to any part of that cross-examination; this, in itself, is a complete answer to the contention. But we add here a reference to the well established principle that, where the defendant elects to take the stand in his own behalf, his credibility may be attacked like that of any other witness, and in this there may be a showing of prior convictions. Sections 491.050 and 546.260, RSMo 1959, V.A.M.S.; State v. Wolfe, Mo., 343 S.W.2d 10; State v. Byrth, Mo., 395 S.W. 2d 133; State v. Washington, Mo., 383 S. W.2d 518. The case of State v. Dunn, Mo., 309 S.W.2d 643, cited by defendant, has no applicability whatever to the present situation. If, after admitting the prior convictions pleaded in the information, defendant had elected not to testify, then no previous convictions could have been shown to the jury. But he did elect to testify, and all convictions were properly shown to affect his credibility. There is no substance whatever in this point. Counsel say that the cross-examination "won this case." If so, that is the chance that such a defendant takes when he elects to testify.

The last point made is that the court erred in admitting into evidence a 12-ounce Pepsi-Cola bottle and its contents. It was not claimed that this was the bottle used by the defendant, and the State only used the exhibit to give the jury visual evidence of the instrument used. The original unopened bottle was shattered on Mr. Powers' head; the neck apparently remained, and some question is raised now as to why it was not produced. We cannot answer that question, but we do rule that State's Exhibit No. 1, the bottle and contents, was admissible. The objection made was that it was not "evidence that the incident happened. This is another bottle we don't know anything about." Mr. Powers specifically described the bottle actually used as a 12-ounce bottle of Pepsi-Cola, and as the only size that he carried; he further testified that the exhibit was "similar" to the bottle with which he was struck. There can be no doubt that two 12-ounce unopened Pepsi-Cola bottles are alike.

██ It is not necessary that every exhibit shall, in itself, *prove* the offense, or any material fact in issue. Demonstrative evidence is generally admissible if it is relevant, even though oral descriptions of the object might be given or have been given, provided there is no specific reason of poli-

cy or principle to the contrary. State v. Wynne, 353 Mo. 276, 182 S.W.2d 294; State v. Miller, 364 Mo. 320, 261 S.W.2d 103. It is true that generally "objects not connected with the defendant or the crime are not admissible unless they possess some probative value." Wynne, supra. But models, casts and reproductions of relevant objects which are not available may be received, in the discretion of the court; this, of course, assumes that the reproduction, or model, fairly represents the conditions which it is offered to show. 22A C.J.S. Criminal Law § 708, pp. 945–946; Ford v. State, 222 Ark. 16, 257 S.W.2d 30; Dolan v. United States (CA 8), 218 F.2d 454. Our courts have held that physical objects not specifically involved in a crime may be admitted in evidence if sufficiently relevant as demonstrative evidence. State v. Looney, Mo., 204 S.W. 25; State v. Cain, Mo.App., 31 S.W.2d 559; and see, generally, State v. Thresher, Mo., 350 S.W.2d 1. Here there was no doubt whatever of the exact similarity of the two bottles, nor of the fact that the one actually used in the robbery was substantially destroyed at the time. There was no deception and no one could possibly have been misled; nor was there anything inflammatory about the exhibit. This is not a case where the prejudice engendered by an exhibit is deemed to outweigh any possible relevancy which it may have. State v. Creed, 299 Mo. 307, 252 S. W. 678. The use of the bottle as a weapon was, under the circumstances of this case, the means of *violence* relied upon by the state in prosecuting defendant under the provisions of § 560.120, RSMo 1959, V.A. M.S.; thus, the demonstrative exhibit was very definitely relevant to one of the issues. Defendant's counsel concede that the "admissibility of demonstrative evidence lies entirely within the discretion of the trial court," but assert that the court's discretion was abused here. We hold that it was not, and that there was no error in receiving the exhibit.

We find no reversible error in those parts of the record which we examine independently under Rule 28.02. The judgment is affirmed.

All of the Judges concur.