**STATE of Missouri, Respondent,**

**v.**

**Roosevelt SAIN, Appellant.**

**No. 52151.**

Supreme Court of Missouri, Division No. 2.

March 13, 1967.

James A. Bell, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Gerald L. Birnbaum, Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was found guilty of the illegal possesion of a narcotic drug. Trial was by the Court, sitting without a jury. Defendant was sentenced to a term of ten years. Section 195.020, RSMo 1959, V.A. M.S., as amended, Laws 1965. A prior federal conviction and imprisonment for a narcotic violation was also alleged, to which we shall refer later. The waiver of a jury trial was shown by entry made of record, in conformity with Criminal Rule 26.01,

V.A.M.R.; the Court made general findings as required by that Rule, and also filed a memorandum opinion. No specific findings or declarations were requested. This appeal was taken after a motion for a new trial was overruled. Defendant was represented at the trial by counsel of his own choice, who has also briefed the case for him here.

The sole question raised on this appeal is the alleged error in overruling defendant's motion to suppress evidence and in the admission of certain exhibits, all of which depends upon the existence of probable cause for defendant's arrest. Counsel state that a pretrial motion to suppress was overruled, but the one we consider here, the only one appearing in the transcript, was filed at the beginning of the trial and was heard and ruled upon a part of the trial evidence. It was then overruled and the trial proceeded. The motion alleged that at the time of defendant's arrest he was not committing any felony or misdemeanor, that the police had no warrant, that the arrest and the search incident thereto were unreasonable, unlawful, and in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and of Sections 15 and 19 of Article 1 of the Missouri Constitution, V.A.M.S., and that any evidence so seized should be suppressed.

The facts came solely from testimony of the State's witnesses. Detective William Cox and his partner Detective James Schultz were in a drugstore at 1000 North Sarah in St. Louis on the morning of January 23, 1965. Defendant, whom Cox had known previously, came in; he walked to the service counter where the owner was standing, but began looking around and "fidgeting"; Cox also testified that he made "a few gyrations with his body," the druggist asked him what he wanted, that he stuttered, and he then asked for some cigarettes. At that point the officers moved over to a position a few feet behind the defendant and, while standing at the counter, he began "rummaging" in and out of his pockets, "all of them." He put his hand in his right "suit coat pocket" and when he pulled it out it contained "a tinfoil packet, rolled, having a brown piece of paper around it, this being about two inches by two inches; also contained was a piece of wax paper which was approximately one inch by three inches, rolled; * * *." Upon looking at these things, defendant hurriedly shoved them back in his pocket, glanced around, and continued searching until he found some bills in his pants pocket. He then got some change and purchased his cigarettes, but he kept "glancing around * * * looking at us." Defendant then hurried out of the store; the officers followed and called to him; he turned and looked at them but started to "continue on"; Officer Cox ran up to him, grabbed his arm and "placed him under arrest," but as he did so the defendant "shoved his hand into his right front coat pocket and withdrew these items which I observed previously and attempted to try and throw them; however, I grabbed his hand and he had his fist clenched with it, and after a brief tug I retrieved these objects from his hand." At this point defendant's counsel was allowed to cross-examine the officer in support of his motion to suppress, and we shall relate anything new or different which was developed. Defendant paid for the cigarettes; the officers had no warrant; they stopped defendant upon a suspicion "based on experience"; and he was arrested because they suspected him of possession of narcotics; they did not know positively what the packets contained, but they wanted to determine this because of his suspicious actions and because they had seized "narcotics of this type" before. Officer Cox also testified: that a few months earlier defendant had told him that he had been a user of narcotics; that he stopped defendant and arrested him because he had a "firm conviction of what these packets contained"; that he had seen numerous packages like that before, having been on the narcotics detail for two years out of district stations, and that he had seen literally hundreds of such packages which had been seized in raids; that some had

contained heroin and some amphetamine; that he had seen no similar packages used for anything else; that while in the drugstore defendant had pulled the packages entirely out of his pocket when Cox was two or three feet to his rear. He further described the wax paper packet as being about one inch by three inches with the ends "curled or folded over into a sort of like sealed package."

At this point the Court overruled the motion to suppress and the two packets were offered and received as exhibits, having been specifically identified and traced to and from the police laboratory. Officer Cox testified further to certain oral statements made by defendant soon after his arrest; these were to the effect that he was driving a cab, that a man by the name of Hemphill entered it, asked him if he wanted to make some money and upon receiving an affirmative reply gave him the packets in question, told him to buy some gelatin capsules and that they would meet and "make up the caps" and sell them (later amended by the witness by stating that defendant was to fill the capsules); that he, defendant, knew that the packets contained heroin, but that Hemphill did not keep the appointment. Cox also testified: that they learned that defendant did have a cab outside the drugstore; that he had advised defendant before he made the statements that he need not make any statement which might be used against him; that he was "allowed counsel" and that they could call one for him; that Detective Schultz was present at the time, and that no threats or promises were made. The Court overruled an oral motion to suppress the statement, which motion was based upon the contention that it was not made voluntarily. The Court thus ruled that the oral statements were voluntarily made.

The other officer, Detective James Schultz, substantially corroborated the testimony of Officer Cox. He, too, saw the defendant remove the two small packets from his pocket in the drugstore; he testified that when defendant was arrested the two packets were taken from him and also a box of gelatin capsules; and he related defendant's oral statements concerning the man in his cab who "gave him a package of heroin." At that time an oral motion to suppress the statement was again overruled. This witness testified also: that the packages which they saw in defendant's possession in the drugstore were similar to ones which had contained narcotics to his knowledge in previous cases; that they arrested defendant "for possession" of narcotics and to determine what he had in the packages.

A chemist from the police laboratory in St. Louis testified that inside the wax paper package there was another piece of paper; that this paper contained 6.05 grams of heroin, a narcotic derived from morphine; that this was enough to fill about 200 capsules of the size found on the defendant. The silver or foil package apparently contained nothing. Both of these exhibits and the green box of empty capsules were received in evidence. Officer Cox, recalled, testified somewhat more specifically to the mode in which the wax paper was folded and "curled" at the time of defendant's arrest, stating that he had seen that kind of wrapping before and that it was unusual.

It was stipulated that the allegations in the information of a prior conviction were true, and that certain exhibits proffered by the State would so show; these were offered and received but they are not in our transcript. Defendant's counsel contended only that such a conviction was not for an offense which would "constitute a felony in the State of Missouri," presumably having in mind our Second Offender Act. Section 556.280, RSMo 1959, V.A.M.S. The Court took this contention along with the case. After allowing time for briefs, the Court found that beyond a reasonable doubt defendant was guilty of illegal possession of heroin, and further found: that the defendant had been convicted in January, 1958, in the United States District Court for the Eastern District of Missouri

of unlawfully acquiring and transferring marihuana, and that he was sentenced and imprisoned therefor; that such offense was not one which would have been punishable under Missouri law by imprisonment in the penitentiary, but that it did constitute a felony violation of the laws of the United States "relating to narcotic drugs" under § 195.200, subd. 1(2), RSMo 1959, V.A.M.S., and that defendant was thus subject to imprisonment for a term of from five years to life. We need not consider further these latter findings, for even under § 195.200, subd. 1(1), as a first offense, defendant would be subject to imprisonment for a term up to a maximum of 20 years. He was sentenced to serve ten years.

We thus reach the basic question, —namely, was there probable cause for defendant's arrest? We have concluded that very clearly there was. The officers first observed defendant's "fidgety" and rather furtive actions in the drugstore; they then saw him pull out of his pocket two "packets" which were definitely recognized by them as being of the type frequently used for narcotics; one officer had been told by defendant that he had been a narcotics user; when the officers called to defendant outside the store he did not stop but continued on, until one of them took hold of him and placed him under arrest. He was arrested because he was suspected of possessing narcotics, and we hold that under these circumstances he was reasonably so suspected. Our conclusion is fully justified by the following cases: State v. Jefferson, Mo., 391 S.W.2d 885; State v. Owens, Mo., 391 S.W.2d 248; State v. Cantrell, Mo., 310 S.W.2d 866; State v. Byrth, Mo., 395 S.W.2d 133; State v. Humphrey, 358 Mo. 904, 217 S.W.2d 551; State v. Napper, Mo., 381 S.W.2d 789; State v. Witt, Mo., 371 S.W.2d 215. In Jefferson, supra, the Court said at 391 S.W.2d loc. cit. 888: "What constitutes reasonable grounds to believe that an offense has been committed by the person arrested is incapable of an exact definition beyond saying that the officer must not act arbitrarily, must exercise his discretion in a legal manner, must use all reasonable means to prevent mistakes and must be actuated by such motives as would influence a reasonable man acting in good faith. State v. Cantrell, Mo., 310 S.W.2d 866, 869[6]; Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 225[2, 3], 228[10]; 13 L.Ed.2d 142." In that case when defendant opened a door the officer saw a syringe and needle in his hand and a cloth wrapped around his arm. This was held to constitute "reasonable grounds to believe" that he was in possession of a proscribed drug, and his arrest was held to be lawful. In Owens, supra, the defendant was seen, while walking across a parking lot at about 1:00 a. m., to drop or throw a "shiny" object to the ground; when the officers came up he dropped a small paper package; this was picked up and found to contain capsules containing a powder. He was then arrested and his arrest was held to be lawful. In Humphrey, supra, it was held that officers might lawfully arrest one who had been carrying papers in his hand which the officers recognized as "policy" sheets. In Cantrell, supra, a car was being driven in an unusual manner on a city street, at 1:45 a. m., namely, by stopping and then moving very slowly while the occupants "looked around"; the officers stopped the car and saw in plain view a 30-30 rifle and a box of shells on the rear seat; the rifle was found to be loaded. The arrest and subsequent search of the car were held to be lawful. State v. Napper, supra, is also directly applicable.

Some of the cases cited by defendant are only applicable in that they recognize the general requirement of probable cause for an arrest, in the absence of a warrant. There can be no dispute about that. The only cited cases which, in our view, merit discussion, are Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, and Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, both of which we find to be distinguishable. In Beck, the Court recognized, at loc. cit. 96 of 379

U.S., at loc. cit. 228 of 85 S.Ct., that: "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543." There officers had stopped a car, arrested the defendant, searched the car and found nothing; later, upon a further search at police headquarters, "numbers slips" used in a form of gambling were found in the car. The arrest was held to have been unlawful because at the time the officers saw nothing to indicate any violation of law, and the only evidence concerning their information or knowledge was that one of them knew that defendant had a record of arrests or convictions concerning "schemes of chance." This was held "too scant" to constitute probable cause to suspect that the defendant was *at the time* violating the law. In Henry, defendant was seen on two occasions carrying cartons to a car occupied by another and stopped in an alley; the officers had heard that the other man might be involved in thefts from interstate shipments. The agents stopped the car as it was driven away and took both men and the cartons to their office; there the contents were examined and the men placed under formal arrest. Upon that search it was found that the cartons contained stolen radios. The Court held that the information and observations of the officers at the time of the arrest did not constitute probable cause for the arrest. It was conceded that the actual arrest took place at the time the car was stopped; at that time the officers were said to have had no knowledge that the packages were "contraband"; the Court further held that the rumor about defendant's companion was "practically meaningless," and that the arrest could not be justified by what the subsequent search disclosed. We do not find that these cases, or any others cited, are controlling or persuasive here. The arrest in the present case was lawful, and it was made upon reasonable and probable cause to suspect that defendant was then committing a crime.

Little need be said concerning the so-called "search"; reference is made more or less incidentally to its supposed unlawfulness. It is clear that officers may conduct a prompt and reasonable search as an incident to a lawful arrest. State v. Green, Mo., 292 S.W.2d 283; State v. Edwards, Mo., 317 S.W.2d 441; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; Arwine v. Bannan (CA 6), 346 F.2d 458; State v. Brookshire, Mo., 353 S.W.2d 681, certiorari denied 371 U.S. 67, 83 S.Ct. 155, 9 L.Ed.2d 119; State v. Witt, Mo., 371 S.W.2d 215. A search of defendant's person here was a reasonable incident of his arrest. So far as concerns the packets and the heroin taken from him, there *was* no search; when he was stopped he took these from his pocket and held them up to open view, trying to dispose of them. The seizing under those circumstances was not a search and was entirely lawful. State v. Jefferson, Mo., 391 S.W.2d 885; State v. Napper, Mo., 381 S.W.2d 789; State v. Owens, Mo., 391 S.W.2d 248; State v. Humphrey, 358 Mo. 904, 217 S.W.2d 551. The only object apparently seized as the result of a search was the box of empty capsules; defendant did not complain specifically of that in his motion for a new trial, and makes no such point concerning it here; moreover, it is obvious that a search of defendant's person at the time and the seizure of such an object was entirely lawful. We hold that none of defendant's constitutional rights, federal or state, were violated.

We have thus dealt with the only questions raised in defendant's brief. We have examined those parts of the record required by Rule 28.02 and find no error. The judgment is affirmed.

All of the Judges concur.