[No. 251-2.    Division Two.    August 10, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. GERALD LOWELL LARKINS, *Appellant*.

*George W. Dixon*, for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel*, for respondent.

PETRIE, J.—Arrested in the early morning hours of April 17, 1968, while sitting in the rear seat of an unlighted automobile parked immediately outside the locked gate of a cemetery, the defendant, Gerald Lowell Larkins, was charged, convicted and sentenced for the crime of "loitering".

During a routine search of defendant's person the arresting officer found, in the crotch of his pants, what appeared to be an empty bottle labeled "Demerol". Such a search is both reasonable and constitutionally permissible. *State v. Henneke*, 78 W.D.2d 136, 470 P.2d 176 (1970).

Although the bottle appeared to be empty, a toxicologist determined that there was "a slight residue around the

neck" and also "in the bottom there was a small amount of residue". The total quantity was estimated to be from 8 to 10 milligrams. Microchemical and spectrographic analysis established that the residual substance was meperidine, the generic name for a synthetic narcotic drug, which one manufacturer has registered as "Demerol".

The defendant was charged with, and by jury verdict convicted of, the crime of possession of a narcotic drug. This appeal followed. The basic question is whether or not the possession of this relatively minute quantity of a narcotic drug, is sufficient to sustain the conviction.

The state argues that the verdict is valid because either: (a) the quantity of the narcotic drug necessary to sustain a conviction is totally immaterial; or (b) the admittedly minute quantity of the drug found in the bottle in defendant's possession is a circumstance, when taken into consideration with other circumstances existing at the time of defendant's arrest, to demonstrate recent possession of a sufficient quantity of contraband to sustain the verdict.

We disagree with the first contention.

The state of Washington, through enactment of the Uniform Narcotic Drug Act, has exercised a valid police power to curb illegal traffic in narcotic drugs and to regulate and control their sale and distribution. *State v. Lee*, 62 Wn.2d 228, 382 P.2d 491 (1963). One facet of the degree of such control is exemplified by RCW 69.33.230, which provides in part:

> It shall be unlawful for any person to . . . possess . . . any narcotic drug, except as authorized by this chapter.

Absent is any requirement of an "intent to sell"; *State v. Henker*, 50 Wn.2d 809, 314 P.2d 645 (1957); or even any "intent to possess"; *State v. Boggs*, 57 Wn.2d 484, 358 P.2d 124 (1961). Furthermore, the act itself requires that the burden of proof of any exception, excuse, proviso or exemption is placed upon the defendant. RCW 69.33.390. In other words:

The legislature, by its enactment of controls against the evils of the narcotic traffic through the adoption of the Uniform Narcotic Drug Act, has made *mere possession* of a narcotic drug a crime, unless the possession is authorized in the act.

*State v. Boggs, supra* at 485.

The legislature did not establish any minimal quantifying amounts of a narcotic drug, possession of which is a requisite to prosecution and guilt. However, the legislature was not entirely unmindful of the element of quantity in its attempted control and regulation. Under limited conditions, the act does not apply to administering, dispensing or selling specified medical preparations which in one ounce contains less than a prescribed amount of a given narcotic. *See* RCW 69.33.290.

Decisions in other states interpreting statutes similar to RCW 69.33.230 appear to be in conflict with one another. *See* 91 A.L.R.2d 810, 829 (1963). We believe the correct rule to be that the substance used as the basis for prosecution must be of such a quantity and quality as to be susceptible of use as a narcotic. *State v. Moreno,* 92 Ariz. 116, 374 P.2d 872 (1962). We cannot ascertain whether or not the 8 to 10 milligrams of residue meet that test. The defendant's attempt to elicit such evidence from the state's toxicologist was denied at trial, quite obviously on the trial court's previously declared ruling that such evidence was immaterial. The defendant should have been permitted to present such evidence to the jury.

Resolution of this question does not, however, entirely dispose of this appeal. The state's alternative theory, that the residue in the bottle is simply one of a series of circumstances establishing a prima facie case of recent unlawful possession of a sufficient quantity is correct. Upon retrial, the court should instruct the jury consistent herewith.

Reversed and remanded.

ARMSTRONG, C. J., and PEARSON, J., concur.

Petition for rehearing denied September 8, 1970.

Review granted by Supreme Court October 1, 1970.