Bobby Dean MORRIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17360.

Court of Criminal Appeals of Oklahoma.

March 13, 1973.

Rehearing Denied April 2, 1973.

Ainslie Perrault, Jr., Ward, Brown & Perrault, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., and Nathan J. Gigger, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

This is an appeal from the District Court of Tulsa County, Case No. CRF–70–2005, where Bobby Dean Morris was charged with Possession of Marihuana in violation of 63 O.S. § 451, and after having waived jury trial, was tried by the court who found him guilty and sentenced him to serve three (3) years in the state penitentiary.

Briefly stated, the facts are that Officers William McDonald and Robert Cartner received a misdemeanor warrant for the arrest of one Bobby Dean Morris, hereinafter referred to as defendant, on the afternoon of the 8th day of September, 1970, and on that evening, at approximately 8:30 P.M., they proceeded to 1132 North Wheeling, Tulsa, Oklahoma, Tulsa County. There were two houses situated on said property and they went first to the front house where they were advised by the occupant, Joseph Stamper, that the defendant lived in the house behind his. The officers, accompanied by Stamper, went to the defendant's dwelling, observed that the door and screen were closed. Stamper knocked on the door and a short time thereafter entered, went to the back of the house and returned with the defendant. The evidence is conflicting at this point as to whether Stamper or the defendant invited the officers to enter, but they entered defendant's premises, advised him that he was under arrest for Assault with a Deadly Weapon, and meticulously advised him of his *Miranda* rights; whereupon, the defendant requested permission to call his attorney and was permitted to do so. He went to another room and used the telephone.

Upon entering the dwelling, Officers McDonald and Cartner smelled the odor of marihuana and while the defendant was making the telephone call, they remained in the living room, observed an unusual motorcycle for a short period of time. They then observed two pipes, in open sight, on a table and approached the table where they detected a strong odor of marihuana. The defendant emerged from the room in which he had placed the telephone call and was advised that he was under arrest for the additional charge of Possession of Marihuana. At this point the defendant stated, "You can't use that, I've already smoked it. I don't keep anything in the house." Detective Cartner asked the defendant where he worked, to which he replied that he did not work, but owned some property, and made the further statement:

"I'm just blowing pot waiting for the revolution."

By stipulation of the parties it was agreed that the pipes, marked State's Exhibits 1 and 2, were taken to the property room of the Tulsa Police Department and then transferred in an unbroken chain of custody to the City-County Health Department, located at 4616 East 15th Street, Tulsa, Oklahoma, on September 9, 1970. By stipulation, the report of the chemist analyzing the contents of the pipes revealed that both contained some burned and unburned marihuana.

The defendant offered no testimony in his behalf and demurred to the State's evidence. At several points during the trial, the defendant was permitted to examine both officers in an attempt to show inconsistencies between the testimony given at preliminary hearing from that given at the trial. Some of this testimony was admitted, but later stricken. The gist of this testimony was that Officer McDonald thought the serving of the warrant would be a good excuse to search the premises. No pretrial Motion was filed to suppress the evidence, nor was any Motion to suppress the evidence ever filed until the defendant rested, demurred, and moved to suppress the evidence.

In light of the foregoing evidence, it is abundantly clear that the evidence amply supports the verdict of the trial court, if the seizure of the pipes containing marihuana was legal. The defendant contends that although a valid search warrant had been issued and the officers had a right to arrest the defendant in accordance with the directive of said warrant, their entry on the premises under the warrant was a subterfuge to search for and recover marihuana. He further asserts that the court erred in not allowing defendant's attorney to question the officers as to whether the arrest warrant was merely a subterfuge to allow the officers to search the residence of the defendant.

From an examination of the testimony heretofore set forth, it is abundantly clear

that the court allowed the defendant to question the officers concerning their motives in going to the premises and properly struck parts of the preliminary testimony from the record as having no probative value.

Defendant relies on Handley v. State, Okl.Cr., 430 P.2d 830 (1967) in support of his argument, and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Handley v. State, supra, is clearly inapplicable to the facts in the instant case, for there was no search —the officers smelled marihuana with a strong aroma emanating from two pipes which were in plain view. Nor does the evidence become tainted or inadmissible under the rule enunciated in Coolidge v. New Hampshire, supra, wherein the Supreme Court of the United States held that for the "plain view" doctrine to apply, the discovery of evidence in plain view must be inadvertent and that the discovery must not be anticipated.

It is our opinion that the evidence which was discovered in plain view was discovered inadvertently and clearly not with prior knowledge of its existence on the premises.

For all of the foregoing reasons, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting):

I respectfully dissent to this decision, because the evidence offered was circumstantial evidence establishing the USE of marihuana. Title 63 O.S.1961, § 469, provides in part:

"The use of * * * marihuana, except when used pursuant to the direction of a licensed physician or dentist for medicinal purposes, is hereby declared to be unlawful and to constitute a misdemeanor, and upon conviction thereof punishable by confinement in the county jail for a term of not more than six (6) months."

When the officers entered the apartment, they smelled a "weak odor of marihuana"; they subsequently observed two pipes sitting on a table; they picked up the pipes, smelled of them, and confirmed that marihuana had been smoked in them. Except for defendant's admission to the officers that he had smoked marihuana, the officers would have only had circumstantial evidence that marihuana had been smoked by someone. On cross-examination Officer Cartner testified, "When I observed it, the pipe it had—the material was packed down in it and had a coal or a burnt coal on top of it where it had been smoked." He was then asked, "Did you see any of that unburnt marijuana in the pipe on that night?" The officer answered, "No, sir, it had a—As a pipe, I'm sure you know what a pipe looks like after it's been smoked." The next question, " * * * Did you see any of that unburnt marijuana in the pipe?" The answer followed, "No, but it could be under the burnt portion."

The officer also testified that he carefully handled the pipes, to prevent spilling the residue from them. Later a tape was placed over the top of the pipes, to assure that the contents would remain in them. The laboratory analysis proved the contents to have been marihuana; but nowhere in the record is there any statement concerning how much marihuana was found. From Officer Cartner's testimony, it is learned that "it could be under the burnt portion."

To my way of thinking, this conviction is a Gross Miscarriage of Justice. When the prosecution must stretch the law of evidence beyond reasonable limits, in order to sustain a conviction, it becomes understandable why the confidence in our system of jurisprudence is shaken. The quantity of substance found in the two pipes in this case was insufficient to sustain a conviction for possession of marihuana.

In Watson v. State, 495 P.2d 365 (1972), the Supreme Court of Nevada was confronted with an appeal from conviction for

possession of marihuana consisting of "17 marijuana seeds weighing but a fraction of a gram scattered on the floor in the bedroom occupied by his two teen-age daughters." In reversing the conviction, the Nevada Court stated on page 366:

"The charge of possession of a narcotic drug requires a union of act and intent. The intent necessary to establish the crime of possession simply does not exist when the amount is so minute as to be incapable of being applied to any use, even though chemical analysis may identify a trace of narcotics."

Other cases in which it was held that possession of minute quantities of a narcotic useless for either sale or consumption is an insufficient foundation upon which to sustain a conviction for possession are: People v. Leal, 64 Cal.2d 504, 50 Cal.Rptr. 777, 413 P.2d 665 (1966); State v. Larkins, 3 Wash.App. 203, 473 P.2d 854 (1970); State v. Haddock, 101 Ariz. 240, 418 P.2d 577 (1966).

Therefore, I respectfully dissent to this decision for the foregoing reasons. This conviction should have been for the misdemeanor offense of USE of marihuana.