**Linda Jean DOYLE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–18116.**

Court of Criminal Appeals of Oklahoma.

June 13, 1973.

Rehearing Denied July 5, 1973.

Sam F. Whitlock, Norman, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Cleveland County, Case No. CRF–72–204, appellant, Linda Jean Doyle, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Sale of a Controlled Dangerous Substance, to-wit: Sale of an Amphetamine. Her punishment was fixed at two (2) years imprisonment. From that judgment and sentence, she has perfected her timely appeal to this Court.

Officer Jay Lowell testified he was an acting undercover narcotics officer for the Cleveland County Sheriff's Office during the month of April 1972. Approximately one week prior to April 19, 1972, he met defendant and Richey Stowe at the Golden Cue, an establishment located at the Campus Corner, Norman. The pair requested a ride to Oklahoma City to a rock concert. Lowell refused but agreed to drive them to defendant's apartment. While en route to the apartment, during a conversation, defendant stated she planned to attend a rock concert in Oklahoma City and intended to purchase a quantity of LSD at that concert. Also on this date, she offered to sell him three LSD tablets which he refused to purchase.

Lowell further testified that on April 19, 1972, at approximately 6:00 p.m. he and Arthur Linville were driving in the vicinity of the above mentioned apartment complex located at the corner of Lindsey and Classen, Norman, Oklahoma. He stated they observed defendant conversing with a male companion in the front of this apartment complex. Linville, who was driving their vehicle, stopped at the complex and Lowell engaged in a conversation with defendant and her companion. Lowell asked defendant "Did you get the acid?" Defendant responded she did not, but inquired whether he would be interested in a quantity of "speed." He indicated his interest and defendant stated she had fifty (50) mini-bennies for sale. Defendant's companion left their presence and the trio proceeded into the residence. Defendant obtained from the kitchen a cellophane package purportedly containing fifty (50) mini-bennies and requested fifteen dollars ($15.00) in exchange for them. They agreed upon a negotiated price of thirteen dollars ($13.00) and the exchange was consummated. Linville and Lowell locked the package, marked as State's Exhibit 1, in a metal container they were carrying in their vehicle, and delivered the package to Officer Gary Robberson on April 23, 1972.

Arthur Linville testified he was also an acting undercover narcotics officer for the Cleveland County Sheriff's Office on the above mentioned date. Linville's testimony corroborated and substantiated all material portions of Officer Lowell's testimony above. For that reason it will not be necessary to give a detailed description of Linville's testimony.

Officer Gary Robberson, Cleveland County Deputy Sheriff, testified he received State's Exhibit 1 from Officers Linville and Lowell, sealed the exhibit in an Oklahoma Bureau of Investigation envelope and delivered the envelope to Don Flynt at the Oklahoma State Bureau of Investigation Laboratory.

Don Flynt, Oklahoma State Bureau of Investigation chemist, testified he exam-

ined State's Exhibit 1 and found from a qualitative analysis the tablets to contain an amphetamine. Further, he stated the substance was classified generally as a central nervous system stimulant. Finally, he stated he did not conduct a quantitative analysis of the tablets. Thereafter, the State rested.

For the defense Wes Whittlesey, M. D., testified the defendant was a patient at the Health Department under treatment for diabetes. Further, he stated defendant presently was being treated with insulin taken by injection. Finally, his testimony revealed diabetics become fatigued very easily and he often prescribed amphetamines for such symptoms.

Defendant testified relating her medical history and the fact it was because of her physical condition she had the above tablets in her possession. Defendant stated she purchased the above tablets for the price of fifteen dollars ($15.00) at the Liberty Bar and took them to reduce the fatigue from which she suffered as a result of her diabetes. Further, she related she had been married but presently was divorced. Of that marriage she had a child which was institutionalized in California with a birth defect. Finally, she admitted to selling the tablets in the instant transaction. Thereafter, the Defense rested.

In defense counsel's first proposition he asserts the state failed to meet its burden of proving the contraband admitted into evidence contained a controlled dangerous substance. This contention is predicated upon counsel's assumption 63 O.S.1971, § 2–206 places the burden upon the state to prove the presence of amphetamine in sufficient concentration to stimulate the central nervous system. It is asserted the absence of such proof is insufficient to support a conviction. Counsel submits that since the testimony of the state chemist is not composed of evidence of the concentration or quantity of the drug, he could not testify to the stimulating effect of the tablets qualitatively analyzed.

Title 63 O.S.1971, § 2–206 states in pertinent part as follows:

"D. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:

"1. Amphetamine, its salts, optical isomers, and salts of its optical isomers."

■ A statute which declares unlawful possession of narcotic drugs which have an exciting effect on the central nervous system of a human or animal, but without further defining the quantity or amount that must be possessed before possession becomes unlawful, does not require the state to prove that the quantity of the drug possessed by the · accused was sufficient to have an exciting effect on the nervous system where the drug itself is within the description of the statute. State v. Jefferson, Mo., 391 S.W.2d 885. Although the rule in *Jefferson*, supra, was decided upon an issue arising out of an offense of possession of an amphetamine, it is in point with the case at bench. Possession and sale of amphetamine in the Oklahoma Code are both prohibited by authority of 63 O.S.1971, § 2–401. The categorization of amphetamine as a controlled dangerous substance is by authority of 63 O.S.1971, § 2–206 and is applied to both offenses.

■ Clearly by the statutory language stating "which contains any quantity of the following substances" the legislature classified amphetamine as a controlled dangerous substance in any quantity. The phrase "having a stimulant effect on the central nervous system" is merely descriptive of the essential nature of the prohibited derivatives and does not imply the necessity of proving a quantitative analysis of the contraband in establishing a *prima facie* case for a violation of the act. See *Jefferson*, supra.

In defendant's second proposition she alternatively argues that if the language of

63 O.S.1971, § 2–206 is construed to prohibit a controlled dangerous substance in any quantity, that portion of the statute is unconstitutional as it is an arbitrary and unreasonable application of the police power as a sale of a harmless quantity of the substance could be prohibited by the act.

▪ Under its general police power, the legislature is vested with the authority to define those acts or omissions which constitute a criminal offense and to prescribe the punishment therefor. Lambert v. State, Okl.Cr., 374 P.2d 783. Generally in construing the reasonableness of legislation as applicable to the legislative exercise of police power, the presumption is in favor of reasonableness and validity of the law. The courts in passing upon statutes enacted under authority of police powers must disregard all matters that relate to the wisdom or policy of the act, and may declare an act void only when it clearly appears that it bears no real or substantial relation to the police power, or the means adopted for effecting the object are manifestly unreasonable. Further, the measure of reasonableness of a police power regulation is what is fairly appropriate to its purpose under all circumstances and not necessarily what is best. Hud Oil and Refining Company v. City of Oklahoma City, 167 Okl. 457, 30 P.2d 169; Shops v. State Dry Cleaners' Board et al., 192 Okl. 251, 135 P.2d 332. When the exercise of the police power bears a reasonable relationship to a legitimate purpose, the courts may not interfere. People v. Fries, 42 Ill.2d 446, 250 N.E.2d 149.

▪ In construing the language of the statute in question, it is this Court's opinion the prohibition of sale of a substance in any quantity which is classified by the legislature as a controlled dangerous substance, either without prescription or with little or no therapeutic value, is not manifestly unreasonable. In the interest of public health, safety and welfare, the legislature did not legislate beyond its authority by prohibiting the sale of such a substance in any quantity. The threat of the drug culture to the people of the State of Oklahoma is so obvious we need not elaborate upon it in detail. This exercise of legislative power bears a reasonable relationship to the purpose of the prohibition of controlled dangerous substances and for this reason this Court will not interfere with the enforcement of this statute as previously interpreted. The presumption in favor of constitutionality of this act has not been overcome.

▪ In the defendant's third proposition it is submitted the magistrate at preliminary hearing improperly sustained the State's objection to the following question:

"Q. What did he say? This is my question, what did he say?

"BY MR. BOSWELL: To which we're going to have to object, your Honor. I think we're getting pretty deeply into hearsay here, and I'm going to have to object to what Jay Cox might have or Richard Stow, pardon me, might have said.

"BY THE COURT: The objection will be sustained until you can show that it is in the presence of the Defendant or in some way related to the Defendant.

"BY MR. WHITLOCK: I'll make an offer of proof then.

"If the Court please, I offer this line of questioning of this witness in an effort to ascertain the previous knowledge of the Officer concerning the connection of the Defendant with LSD or drugs; and I think it has to do with who first initiated the suggestion of a sale.

"And this is why I'm pursuing this is in an effort to show that the Officers themselves first suggested the sale in support of the defense of entrapment, and that's why I request permission of the Court to follow this line of questioning.

"BY THE COURT: The offer of proof will be denied until it can be shown that the Defendant is in some way related to the conversation at hand."

Following denial of defense counsel's offer of proof, counsel did not pursue the same line of questioning nor did he establish the question to be within an exception to the hearsay rule. We find the magistrate did not err in sustaining the state's objection to the above question. Consequently, the proposition is without merit.

 In the fourth proposition defense counsel argues his requested instructions numbers 1, 2, 3 and 4 should have been given to the jury. We note requested instructions 1, 2 and 3, in substance, charge the jury with finding beyond a reasonable doubt the contraband admitted into evidence had a sufficient quantity of amphetamine to have a stimulant effect on the central nervous system and constituted a danger to public health, safety and welfare. In deciding propositions numbers one and two, we determined quantiative proof to be unnecessary in establishing a *prima facie* case of sale of a controlled dangerous substance. Therefore, the trial court properly refused these instructions.

 Additionally, counsel submits the proof is sufficient to raise a question of fact upon the issue of entrapment and consequently, the trial court erred in not instructing upon this defense. We have carefully studied the record and do not find sufficient evidence to support an instruction upon the defense of entrapment. Defendant upon cross-examination admitted the instant offense further stating she was not forced to become involved in the transaction. For the above reasons, we find this proposition to be without merit.

 Defense counsel argues in his fifth proposition the legislative prohibition of suspended sentences for sale and distribution of controlled dangerous substances, 63 O.S.1971, § 2–401, is an unconstitutional legislative encroachment upon judicial powers and is violative of the equal protection clause under the Oklahoma and United States Constitutions. Consequently, the statutory prohibition for a suspended sentence for the instant offense is an unconstitutional mandate. In Black v. State, Okl.Cr., 509 P.2d 941, the above question was settled with this Court stating as follows:

"The defendant argues that the section is unconstitutional and that Legislature has exceeded its constitutionally limited powers by invading the judicial domain, that the denial of the possibility of probation constitutes cruel and unusual punishment and violates due process and equal protection of the laws. We are of the opinion that the Legislature properly exercised its power to prohibit suspension of a sentence in a given case as an inherent part of its power to prescribe punishment for the acts which it has prohibited as criminal."

In light of the above authority, we find this proposition to be without merit.

 In defense counsel's sixth proposition he urges punishment is excessive. We have repeatedly held the question of excessivensss of punishment must be determined by a study of all the facts and circumstances in each particular case. Wofford v. State, Okl.Cr., 494 P.2d 672. Considering the facts and circumstances in the instant case, coupled with the fact the jury imposed a penalty within statutory limits, we cannot conscientiously say the sentence imposed shocks the conscience of this Court. Considering the penalty imposed, we will not disturb the jury's assessment. See Jackson v. State, Okl.Cr., 494 P.2d 358.

The judgment and sentence is affirmed.

This Court commends court appointed counsel for the professional manner in which he has pursued the defendant's appeal. The excellent briefs filed in behalf

of his client conform to the finest traditions of our adversary system of jurisprudence.

BUSSEY, J., concurs.

BRETT, Judge (concurring in part and dissenting in part):

From the evidence produced for the jury, I concur that the evidence was sufficient to sustain this conviction, considering also that defendant admitted the sale. However, I must dissent to this Court's treatment of defendant's fifth proposition pertaining to a suspended sentence. I reiterate what I said in my dissent to Black v. State, Okl.Cr., 509 P.2d 941. In addition to the reasons set forth in that dissent, this case is another example of the justification for the discretionary judgment of the trial court to enter a suspension of the sentence when the situation appears to warrant such.

In the instant case the defendant is a diabetic patient, who requires the administration of insulin each day. This was her first offense and there was no showing that she had otherwise engaged in narcotics, except what the officers volunteered concerning LSD. Notwithstanding the fact that the jury returned a verdict assessing the minimum sentence, this conviction imposes additional burdens upon the penal system which might have been justifiably obviated by the suspension of the penitentiary sentence. Also, there is nothing in the record to indicate that the suspension might not be warranted under other circumstances. Consequently, it will be necessary for the penal authorities to obtain, store, and provide for the daily administration of the particular type of insulin defendant requires in order to assure her continued livelihood.

I am also compelled to dissent to this Court's treatment of defendant's second proposition pertaining to the quantity of narcotics considered. There is no doubt in my mind but that the legislature intended that a usable quantity of the illegal narcotic possessed, or otherwise considered in violation of the statutes, be proved in order to sustain a conviction. I repeat what was stated in my dissent to Morris v. State, Okl.Cr., 507 P.2d 1327, 1330 (1973), citing what the Nevada Supreme Court stated with reference to the possession of narcotics, in that court's decision in Watson v. State, 495 P.2d 365 (1972):

"The intent necessary to establish the crime of possession simply does not exist when the amount is so minute as to be incapable of being applied to any use, even though chemical analysis may identify a trace of narcotics." See other cases cited in Morris, supra.

Admittedly, it is a logical conclusion for the jury to reach the conclusion that a usable quantity of stimulant exists in the total of fifty mini-bennies, but that does not support this Court's position that "any quantity" should support a conviction.

I agree also that there was not sufficient showing in this case to warrant an instruction on entrapment. Therefore, I concur in part, and dissent in part as herein stated, to this decision.