Alphonzo HARRISON, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A–15259.

Court of Criminal Appeals of Oklahoma.

Oct. 8, 1969.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Daniel F. Gibbens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Alphonzo Harrison, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the crime of Murder, and from the judgment and sentence fixing his punishment at life imprisonment in the state penitentiary, a timely appeal has been perfected to this Court.

Briefly stated, the facts adduced on the trial reveal that around 2:00 or 2:30 in the afternoon of July 20, 1968, the defendant entered Crosby's Pool Hall, chased Clarence Reed (the deceased) with a bumper jack, struck the deceased in the back of the head at least twice with the jack after the deceased stumbled and fell. At all times the defendant was in a standing position.

At this point Elizah Robinson, the operator of the pool hall, got his pistol from the back bar and ordered the defendant to quit hitting the deceased, which he did, and the defendant then asked him to call the law. There is no phone in the establishment and Mr. Robinson gave someone a dime to go and call the police. The defendant then left the premises, and an ambulance arrived and picked up the body of the deceased. An autopsy was performed and the cause of death was multiple skull fractures on the back left side of the head.

Officers Gary Smith, Jerry Johnson, Charles Douglas and Officer Causley had been informed that the defendant was wanted for questioning in connection with the homicide. They arrived at 19th and Prospect, advised the defendant of his constitutional rights, and placed him under arrest.

Defendant was the only witness in his own behalf. He testified that he was a tubercular, but that Reed, whom he knew as Red Blalock, was under the impression that defendant was an epileptic. Defendant testified that Reed had robbed him of money on three previous occasions, the last occasion being the morning of the homicide. That afternoon defendant met up with one Willis outside the pool hall and asked Willis to drive defendant to his mother's house. Willis agreed, but first wanted to return the bumper jack, so Willis entered the pool hall with the jack and defendant followed. Defendant said Reed pulled out a knife from his pocket and Willis handed defendant the jack, which then came apart in three pieces. He further testified that Reed roughed him into the wall and defendant hit his arm in the process and knocked the knife from his hand. Reed then ran and defendant asked for the return of his money. Defendant asked others in the rear to catch Reed and they stopped him and someone whom defendant could not identify, hit Reed with another part of the bumper jack and shoved him back so that he fell on top of defendant. Defendant could then see that Reed had been hit in the back of the head. Defend-

ant struck Reed once while in a sitting position with Reed on top. He denied any intention to kill Reed, and denied that he had ever struck Reed in the back of the head.

■ On appeal, as in his Motion for New Trial, the defendant contends that the trial court erred when it failed to instruct on Manslaughter, as requested. In the case of Newby v. State, 17 Okl.Cr. 291, 188 P. 124, this Court held:

"The refusal to give manslaughter instructions is not error if there is no evidence to reduce the degree of the crime from murder to manslaughter." [listing many citations].

And further, in Newby v. State, supra, citing Sayers et al. v. State, 10 Okl.Cr. 233, 135 P. 1073, it is stated:

"When a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one."

■ In the instant case, defendant's testimony is consistent with only two theories: (1) his blows to the deceased were not the ones that killed him; and (2) if his blows did cause death, defendant was acting in self-defense. The trial court's instructions 3, 6, and 11 were adequate to cover both of these theories, and defendant has not claimed otherwise. For the above reasons, we are of the opinion that this assignment of error is without merit.

■ Defendant, in his own behalf, has submitted a number of items he claims to be error. He first contends that it was a false and improper arrest, in that no warrant was shown.

The pertinent part of 22 O.S. § 196, states as follows:

"A peace officer may, without a warrant, arrest a person:

\* \* \* \* \* \*

2. When the person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

In construing this statute, this Court stated in Darks v. State, Okl.Cr., 273 P.2d 880:

"Arrest by peace officer without a warrant is not unlawful if officer from his own knowledge or from facts communicated to him by others has reasonable grounds to believe that person arrested has committed a felony."

See also Reed v. United States, C.A.Okl., 364 F.2d 630 (1966), certiorari denied 87 S.Ct. 878, 386 U.S. 918, 17 L.Ed.2d 789.

■ In the instant case defendant was arrested after a homicide had been committed and on the facts communicated to them, the police officers had probable cause to believe the defendant was guilty. In accordance with the authority above set forth, we are of the opinion that the arrest was lawful; however, even had the arrest been illegal, the failure of the defendant to raise this issue prior to entering a plea to the charge on its merits and proceeding to trial, constituted a waiver and therefore may not be urged as a grounds for reversal. This Court has repeatedly held that:

"The fact that an original arrest may have been unlawful does not affect the jurisdiction of the court, nor is it a ground for quashing the information. And it does not preclude trial of the accused for the offense."

See Allen v. State, Okl.Cr., 400 P.2d 463, and Walters v. State, Okl.Cr., 403 P.2d 267.

Defendant next contends that he was "Held incommunicado from 7–20–68 until 7–22–68 (a busy signal terminated the one phone call) without an attorney to aid me, I was unable to learn if I had a real charge against me or a 'Harrassment' which is contrary to the United States Constitution."

The only portion of the record which remotely touches this issue deals with the defendant's isolation and physical condition

and appears at page 200 of the case-made, where the defendant testified as follows concerning his physical condition, the fact that he was a tubercular and had been in the T.B. Sanitarium at Clinton:

"A. I'm a patient down there, I don't have any income. My mother and my brothers, everybody, I can't be around their children, so I had to move off and move down on Second Street whenever I'm in town. When I'm here in town, I come and stay a month and I start feeling bad and I go back down to Clinton.

Q. And is that the reason you are living apart from your family?

A. Yes, yes.

Q. And, where did they have you in jail?

A. In the hospital ward off to myself, by myself."

█ It is readily apparent that the defendant is an active tubercular and was placed on isolation in the hospital ward, but it does not appear that the defense was impaired in any way by such action, nor does it appear that this issue was ever raised in the trial court. We must, accordingly, hold that this assignment of error also is without merit.

█ Defendant next contends "Preliminary arraignment was both 'Improper and Ambiguous' in that I did not see the Magistrate (Justice of the Peace Jack Freeman) but his personal secretary informed me that 'bail was denied' contrary to U.S. Constitution. I asked to see and speak to the Magistrate personally, this request was also denied, error occurred 7–22–68."

Article 2, § 8 of the Oklahoma Constitution states:

"All persons shall be bailable by sufficient sureties, except for capital offenses when the proof of guilt is evident, or the presumption thereof is great."

As this Court stated in the first paragraph of the Syllabus of Ex parte Taylor, 93 Okl.Cr. 25, 224 P.2d 611:

"The right to bail in a capital case is absolute unless proof is evident or the presumption great that defendant is guilty as charged and that in case of conviction he would probably receive life sentence or death."

In the instant case the defendant was found guilty and was sentenced to life imprisonment in the state penitentiary. Under these circumstances we are of the opinion that this assignment of error is without merit.

Defendant next asserts "Error of law occurring at preliminary hearing 8–15–68. All errors were excepted to—a transcript of the preliminary proceedings was made —Attorney Jo-Ann Fisher who represented me at that time has the transcript now, I am certain that she will give it to you upon request."

Nothing of the preliminary hearing appears in the record in this case, and cannot be considered on appeal.

Defendant next contends "A motion for a continuance was made before District Judge J. Parr 10–8–68 by attorney Jo-Ann Fisher—motion was denied by District Judge Jack Parr—no witnesses for defense had been subpoenaed although I had a list of nine witnesses to be subpoenaed. I tried unsuccessfully from 8–15–68 until the morning of court 10–8–68 to get a list of my witnesses brought to my attorney's or the court's attention—all efforts were in vain. Contrary to U.S. Constitution I was denied due process of law."

█ In the first paragraph of the Syllabus of Pitts v. State, Okl.Cr., 431 P.2d 449, this Court stated:

"Application for continuance is addressed to the sound discretion of the trial court, and a conviction will not be reversed because the trial court overruled such an application unless a manifest abuse of discretion appears."

In the instant case the defendant took the stand during the trial, and had ample opportunity to make a record of the witnesses whom he thought should have been called. This he did not do. To give credence to his claim at this late stage, particularly in light of the entire record, would be

an unreasonable attack on orderly trial court proceedings, and we are of the opinion that this assignment of error is without merit. Furthermore, the record here does not reflect that a trial continuance was requested.

■ Defendant next asserts "Contrary to U.S. Supreme Court ruling (Witherspoon v. Illinois) error occurring before District Judge Jack Parr, in that, all prospective jurors who professed religious or moral scruples against the death penalty were automatically excluded from serving on my jury."

In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the United States Supreme Court stated:

"In Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment."

Thus it can be seen that the rule of Witherspoon is not applicable, and this assignment of error is without merit.

■ Defendant's next assignment of error deals with the improper impanelment of the jury, in that three of the jurors had been assigned to another case, had listened to evidence and were crying and visibly shaken by what had been presented in the other case and therefore they were not able to give him a fair and impartial trial.

The voir dire does not appear in this record, nor does the number of challenges appear. Defendant was ably represented by trial counsel of his own choosing and no objection to the jury was made in this respect, and we must accordingly hold that this assignment of error is not supported by the record.

The defendant's next assignment of error is so vague that it presents nothing for review, and therefore will not be considered in this appeal.

It is next contended that the District Attorney made remarks prejudicial to the defendant in his closing argument. Since the closing remarks of the District Attorney were not preserved in the record, this assignment of error is not properly before the Court and is not supported by the record.

Defendant next raises the same issue with which we have dealt under our first proposition.

■ The remaining assignments of error raised by the defendant in his supplemental brief and his handwritten amendments thereto, either are not supported by the record, or are so frivolous that they will not be dealt with in this opinion. Suffice it to say that the proof of defendant's guilt was overwhelming and but for the excellent representation rendered by his trial counsel, he might have received the death penalty.

In accordance with the authorities above set forth, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.