Eddie Lee TURNER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–17329.

Court of Criminal Appeals of Oklahoma.

May 3, 1972.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for defendant in error.

James O. Braly, Durant, for plaintiff in error.

BUSSEY, Presiding Judge:

Eddie Lee Turner, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Bryan County, Oklahoma for the offense of Carrying a Firearm, After Former Conviction of a Felony; his punishment was fixed at eight (8) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Stephen Allen Johnson testified that on October 21, 1971, he was employed as a checker at the Green Spray Food Center in Durant, Oklahoma. At approximately 10:00 o'clock p. m., the defendant entered the store and purchased a coke. The defendant was wearing gloves, and Johnson became suspicious. Johnson went upstairs and continued to observe the defendant through a one-way mirror. He testified that the defendant pulled out a gun and "kind of twisted it over, and then put it back down in his pants in front." (Tr. 7) He called down to the checker who was on duty and informed him that the defendant had the gun.

Joe Paul Johnson testified that he was employed at the food store on the evening in question, and that he first observed the defendant pushing a shopping cart. Defendant was not mearing gloves. Johnson testified that he had earlier observed a pair of gloves lying on a Tide display in the back of the store, and after observing the defendant, he went back to the Tide display and observed that the gloves were missing. He observed the defendant a short time later, and the defendant was wearing a pair of gloves "matching the same description."

Richard Eugene Dunham testified that he was employed at the food market and first observed the defendant shortly before 10:00 p. m. Dunham testified that he observed the police officers come into the store and apprehend the defendant. He testified that the defendant appeared to be peaceful and quiet at the time of the arrest.

Julian Campbelle testified that he was the night manager of the super market, and that on the evening in question, after talking to one of the employees, he called the police. He testified that he was present when the police arrived and observed them take a gun from the defendant's belt.

Officer Hendrix testified that he and Officer Elledge were dispatched to the super market, and approached the defendant from opposite directions. He testified that he observed the gun as he approached the defendant. He asked the defendant about the weapon, and the defendant stated, "That's my hunting gun." (Tr. 54) He testified that Officer Elledge removed the gun from the defendant's person. Officer Elledge's testimony did not differ substantially from that of the witness, Hendrix.

The defendant testified that he came to Durant with Joe Welch. Their car, which was parked about three or four blocks from the super market, would not start. He decided to go to the store and buy some groceries for his mother-in-law, who lived in Caddo, while Welch was waiting for the car to cool down. Defendant testified that he entered the market and was purchasing groceries when the police arrived and placed him under arrest. He admitted having the gun in his possession, but stated that he did not know it was unlawful for him to carry a gun. He testified that he purchased the gun in Sherman, Texas for the purpose of protection, and that a former boyfriend of his wife was jealous and

was carrying a weapon for use against him.

▇▇▇ The first proposition asserts that the trial court erred in refusing the defendant's request for a continuance. Although the defendant asserts in his brief that he "renewed his motion for a continuance," the record before this Court reflects that the defendant made an oral motion for a continuance after the jury had been selected in order to obtain the presence of the witness, Joe Welch. · There is nothing before this Court to show that the defendant complied with the requirements of 12 O.S., § 668, which provides in part that the party moving for a continuance must set forth in affidavit form facts showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain service on the missing witness. It has long been the rule in this state that an application for a continuance is addressed to the sound discretion of the trial court, and a conviction will not be reversed because a trial court overrules such an application, unless a manifest abuse of discretion appears. Harrison v. State, Okl. Cr., 461 P.2d 1007. From the record before this Court, we cannot hold that the trial court abused its discretion in denying the defendant a motion for continuance. We, therefore, find this proposition to be without merit.

The second proposition contends that "the introduction into evidence of the gloves over the objection of the defendant was prejudicial to the rights of the defendant, and denied him a fair and impartial trial." We need only to observe that the gloves were not introduced into evidence. The record reflects that the following transpired:

"BY MR. McGAHEY: I would like to offer the weapon and the gloves in evidence at this time.

"BY MR. BRALY: Well, now, if the Court please, we object to the gloves. They obviously haven't been properly identified.

"BY MR. McGAHEY: He identified them as positively the gloves.

"BY MR. BRALY: Well, we further object to the positive as part of the res gestae, and it doesn't tend "to prove or disprove any element of the offense charged, and highly prejudicial.

"BY THE COURT: The Court will sustain the objection to the gloves, and admit the weapon into evidence at this time." (Tr. 56) (Emphasis Added)

▇▇ The final proposition asserts that the court should have granted a mis-trial requested by the defendant. The defendant requested a mis-trial after the following questions and answers:

"BY MR. McGAHEY: Well, I'm principally interested in whether or not you had received a report to be careful of this defendant?

"A. Well, yes, I had. I had received a report that he had taken—that he had some gloves on at the front of the store. And, then, I was telephoned through an intercom system in the store, that he had a gun on him and I was to watch—." (Tr. 29)

Defendant argues under this proposition that the "statements and the questions by the District Attorney that they had been told to be careful" painted the defendant as a person not to be trusted and placed him in an unfavorable position before the jury. The burden then shifted to him (defendant) to establish his innocence. In Melot v. State, Okl.Cr., 375 P.2d 343, we quoted from the Fifth Syllabus of Johnson v. State, 95 Okl.Cr. 1, 237 P.2d 909:

" 'Where the guilt of the defendant is clear and there is no reason to believe that the jury could arrive at any other verdict but guilty the court will not reverse a case because of improper conduct of the county attorney.' "

In the instant case, taking the defendant's testimony in its best light, we are of the opinion that the jury could arrive at no other verdict but "guilty." We, therefore, find this proposition to be without merit.

The judgment and sentence is, accordingly, affirmed.

BRETT and SIMMS, JJ., concur.