**Ronald Lynn VIRGIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–18142.**

Court of Criminal Appeals of Oklahoma.

Oct. 2, 1973.

Rehearing Denied Oct. 25, 1973.

Milton Keen, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Ronald Lynn Virgin, hereinafter referred to as defendant, was charged and tried in the District Court of Oklahoma County, Case No. CRF–72–698, for the offense of Murder, he was convicted of the lesser included offense of Manslaughter in the First Degree, his punish-

ment was fixed at a term of ninety-nine (99) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Bob Collum testified that on March 24, 1972, he was the owner and operator of the Shaft Lounge in Oklahoma City. He testified that Susan Badek was working with him in the lounge on the evening in question; that when he closed the lounge at midnight, Susan Badek and defendant were the last persons to leave. He walked over to his car which was parked in front of the lounge where Larry Ward, Charles Allspaugh and Eddie Rowe were standing. As he was showing them his car, he observed defendant and Susan Badek walking toward their car. Allspaugh walked over toward the defendant as he continued to talk to his friends until a scuffle began between Allspaugh and defendant. He, Ward and Rowe ran over to break up the scuffle and Ward shoved defendant back. He thought defendant was going to fall through a plate glass window and grabbed for his shoulder. Defendant swiped at him and Ward with a long, slim knife. At this point, he observed that Allspaugh was bleeding from the stomach. He and Eddie Rowe helped Allspaugh to a pickup truck while Ward was still struggling with defendant. Ward and Rowe took Allspaugh to the hospital in the pickup and he followed in his car. After talking to police officers at the hospital, he returned to the scene and defendant was no longer there. He testified that all the parties were in the bar during the course of the evening and that there had been no trouble of any kind between Allspaugh and defendant. He testified that he did not see a weapon in the possession of Allspaugh at any time. On cross-examination he testified that earlier in the evening he and defendant had words about who was going to take Susan home, but that it ended in a friendly manner. He denied asking his three friends to prevent defendant from taking Susan home.

Larry Ward testified that he went to the Shaft Lounge on the evening in question, arriving at approximately 11:15 p. m. He drank three beers and when the bar closed, he stood outside talking to Rowe and Collum about Collum's car. He looked over toward the cleaners and observed Allspaugh fall back holding his stomach. He walked over and stood between defendant and Allspaugh. Eddie Rowe grabbed hold of Allspaugh and said "He has been stabbed." At this point he observed defendant waving a knife around. He backed off and Collum and Rowe put Allspaugh into his pickup. Defendant started kicking on the pickup and beating on it with the knife. They backed out and took Allspaugh to St. Anthony's Hospital. He testified that he had not seen any dispute between defendant and Allspaugh during the course of the evening and that he had never seen Allspaugh carry any type weapon. On cross-examination he denied that Collum asked him to assist him in not letting defendant take Susan home.

Eddie Rowe testified that he went to the bar on the evening in question with Allspaugh, arriving at approximately 9:00 p. m. They stayed until the bar closed and upon leaving, Collum asked him if he had seen his new car. As he was looking at the car, somone yelled and he observed that Allspaugh was slumping over holding his stomach. He went over, grabbed Allspaugh and put him into Ward's pickup. He testified that the same guy who had been standing in front of Allspaugh grabbed the handle of the pickup door and tried to get in and started beating on the windshield with a knife. He further testified that Allspaugh did not have any dispute with anybody in the bar and that he did not have any type weapon. On cross-examination he denied that Collum had asked him or any of the others to stop defendant from taking Susan home.

Susan Badek testified that the defendant brought her to work at the Shaft Bar on the evening in question and remained in the bar during the entire evening. She testified that the defendant had a slight altercation with Bob Collum concerning who was going to take her home. Defendant

told Collum that he didn't want to fight over a girl because they had been friends too long. As she and defendant were leaving the bar, Charles Allspaugh said to defendant "Whatever Bob Collum wants, he gets." She told the defendant that they should go on and she proceeded to go to defendant's car. She put her purse in the car and then came back around the corner. She observed Allspaugh grab the defendant around the neck. She testified that "Bob and all of them were in the big middle of it." She broke up the fight and observed that Allspaugh had been stabbed, although she did not see any person with a knife. After the altercation, she and defendant went to the Taco Bell and then to Lake Hefner where they talked about what had happened. Defendant stated that Allspaugh came up to him and started a fight and the others jumped on him. He saw someone with a knife and put Allspaugh in front of him. She spent the night with the defendant at his apartment. The defendant did not make any attempt to call the police.

Dr. Charles Marshall testified that he was a consultant pathologist for the State Medical Examiners Office and that he performed an autopsy on the body of Charles Allspaugh. He found multiple stab wounds in the chest and in the right forearm of the decedent. He testified that the wound to the arm is usually described as a "guard wound." In his opinion the fatal wound was the one in the left anterior chest which penetrated into the left side of the chest and through the pericardium and through the heart.

Detectives Thompson and Phelps testified concerning their investigation of the scene. Officer Montgomery identified pictures he took of the scene and of the decedent.

For the defendant, Ronald Barnett testified that he went into the Shaft Bar sometime before midnight to get the telephone number of a friend. He went next door to the 7–11 Store and made a telephone call. While he was in the telephone booth, he saw a group of five or six people standing around in front of the bar. He did not see any fight nor did he see anybody with a knife.

Harold Nichols testified that he was working at the Pak-a-Sak Store which was located near the bar on the evening in question; that sometime between 11:00 and 12:00 p. m. he heard a big commotion outside the bar and that four or five people were arguing. He testified that he could not identify any of the parties.

The first proposition asserts that the trial court erred in instructing the jury that the punishment for Murder was either life imprisonment or death in the electric chair, whereas the Supreme Court of the United States had previously held that the death penalty was unconstitutional. In dealing with an identical proposition in the recent case of Stidham v. State, Okl.Cr., 512 P.2d 1190, wherein we affirmed a life sentence for the offense of Murder, we stated:

"The final proposition asserts that the trial court erred in instructing the jury as to death penalty when the death penalty had already been ruled to be violative of defendant's constitutional rights by the United States Supreme Court. Defendant argues that such instructions could not help but inflame the passion of the jury to find against the defendant, whether or not they found for death. In view of the overwhelming evidence of defendant's guilt and the verdict of the jury, we are of the opinion that the defendant was not prejudiced by the court's instruction. The judgment and sentence is affirmed."

The second proposition contends that the defendant was denied his constitutional rights to a fair trial by the willful, improper and prejudicial misconduct of the Assistant District Attorney. We have carefully examined each of the alleged acts of misconduct of the Assistant District Attorney and are of the opinion that the same do not constitute reversible error. In Turner v. State, Okl.Cr., 497 P.2d 456, we

cited with approval the Fifth Syllabus of Johnson v. State, 95 Okl.Cr. 1, 237 P.2d 909, wherein the Court stated:

"Where the guilt of the defendant is clear and there is no reason to believe that the jury could arrive at any other verdict but guilty the court will not reverse a case because of improper conduct of the county attorney."

The third proposition asserts that the trial court erred in refusing to give defendant's requested instructions on self-defense. We are of the opinion that the trial court properly refused defendant's instructions on self-defense in that there was no evidence presented on behalf of defendant nor was evidence adduced by the State in its case in chief which entitled the defendant to a self-defense instruction. Defendant's theory of defense was adduced through the testimony of Susan Badek who testified that she did not see the defendant stab anyone nor did she see the defendant with a knife. She further testified that defendant later told her that someone had a knife and that he used Charles Allspaugh as a shield. Defendant's theory of defense was thus not that he was acting in self-defense, but rather that he did not stab the deceased. We therefore find this proposition to be without merit.

The fourth proposition contends that defendant was denied his right to have a list of the State's witnesses served on him at least two days before the trial. The record reflects that after the jury was selected, defendant objected to the testimony of the first witness for the reason that he had not been served with a list of the State's witnesses. The court, upon ascertaining that the defendant had received a copy of the Information a "couple or three months ago" which contained the names of all the State's witnesses, overruled defendant's objection. We are of the opinion that the trial court properly overruled defendant's objection. In Born v. State, Okl.Cr., 397 P.2d 924, we stated in the second paragraph of the Syllabus:

"The law does not prescribe the manner in which the names of witnesses in a capital case shall be furnished the defendant. If it be made to appear to the satisfaction of the trial court that such names were furnished the appellant at least two days before the case was called for trial, the manner in which the names were furnished becomes immaterial."

Defendant's fifth and sixth propositions assert that the trial court erred in qualifying the jury for the death penalty and in instructing the jury that the penalty for Murder is death or life imprisonment. For the reasons stated in proposition one, we are of the opinion that these propositions are without merit.

The final two propositions contend that the trial court erred in overruling defendant's various motions and that the accumulation of errors and irregularities deprived defendant of a fair trial. We have carefully examined each proposition and are of the opinion that they are likewise without merit. The judgment and sentence is accordingly affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.