Lorreta Diana **LEHMAN**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–281.

Court of Criminal Appeals of Oklahoma.

June 17, 1975.

Carroll Samara and Lawrence H. Mc-Millin, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

## OPINION

PER CURIAM.

Appellant, Lorreta Diana Lehman, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–951, for the offense of Unlawful Distribution of a Controlled Dangerous Substance, in violation of 63 O.S.1971, § 2–401 (B–2). Her punishment was fixed at a term of two (2) years' imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Arthur Linville testified that he was an agent for the Oklahoma State Bureau of Investigation. In April, 1972, he was working as an undercover narcotics agent. At approximately 2:50 P. M. on April 1, 1973, he and an informant, John Holding, went to the home of defendant's parents on S.W. 50th Street in Oklahoma City. The agent testified that he knocked on the door of the residence and the defendant admitted them. The defendant then showed the agent and Holding to a bedroom. Seated there on a bed was the defendant's mother. Following a brief, general conversation, the defendant turned to her mother and asked her mother to hand her the "stuff." Defendant's mother opened a nightstand drawer and took out a plastic bag containing approximately one thousand (1,000) white, double-scored tablets. The bag was handed to the defendant who then handed it to Agent Linville. The price agreed on was $20 per one hundred tablets, or $200 for the thousand. Linville said he handed the defendant sixty ($60.00) dollars in twenty dollar bills, stating that he would have to go to his car to get the rest of the money. The agent went out the front door to the porch on the pretext of going to get the money. From the porch, he motioned to another Oklahoma State Bureau of Investigation agent, Kenneth Jacobsen, who was seated in a parked car down the street, to come to the residence.

Jacobsen joined Linville on the front porch and went into the bedroom where the defendant, her mother, and the informant were waiting. At this time, Linville and Jacobsen identified themselves as agents, informed the defendant that she was under arrest, and advised defendant of her rights.

Defendant was driven to the Bureau's office by Agent Jacobsen. Linville and Holding followed in Linville's car.

On cross-examination, Agent Linville said he had no personal knowledge of any drugs having been sold from this residence before. He also testified that the defendant told him that she had received the drugs from a boyfriend on the day of the sale. Linville did not recall the name of the boyfriend having been specifically mentioned and his report included no information about the boyfriend. As to the purpose of taking the defendant to the Bureau before taking her to jail, Linville said that shortly after they drove away from the 50th Street address, Jacobsen called Linville over the radio and told him that the defendant wished to discuss the possibility of her working as an informant. Linville said he had no idea of whether this idea originated with Jacobsen or the defendant.

The defense waived the appearance of Richard Hines, a forensic chemist employed by the Oklahoma State Crime Laboratory. It was stipulated that Hines' testimony would be that an analysis of the tablets purchased by Agent Linville showed the tablets to contain amphetamines. The report of the analysis was admitted into evidence.

Testifying for the defendant, Agent Jacobsen stated that he saw none of the transaction that took place inside the house and that the only reason for his going into the house was to make an arrest. He fur-

ther testified that the defendant told him that she was familiar with several people who were involved in drug traffic in Oklahoma City, and she wondered if it would be possible for her to make some kind of arrangement to work for the Bureau based on the charges against her.

Testifying in her own behalf, the defendant said that she had been given the pills she sold by a boyfriend on the day she sold them. She said that one Jim Askins had called her earlier in the day and asked her to sell the pills to someone and collect the money for him (Askins). Shortly after Askins brought the pills to her, Holding called and asked her if she had any drugs. When defendant replied that she did, Holding said he would come over and get them. Defendant also said that it was Agent Jacobsen who brought the possibility of her working as an informant for the Bureau.

Defendant's first proposition is that the trial court erroneously overruled her demurrer to the evidence. Defendant asserts that the evidence showed the defendant had been entrapped into committing the offense. Entrapment having been shown, defendant asserts that the State failed to rebut this defense and, therefore, the demurrer to the evidence should have been sustained.

■ We have carefully studied the record and do not find sufficient evidence to raise the defense of entrapment. In Robinson v. State, Okl.Cr., 507 P.2d 1296 (1973), this Court, quoting Watson v. State, Okl.Cr., 382 P.2d 449 (1969), stated:

" 'The defense of entrapment, like self-defense, is an affirmative one * * * and before it can be considered by the jury, there must appear some evidence which, if believed, would reasonably tend to establish the fact that defendant was lured into the commission of the crime by officers.' "

In the instant case, there is no evidence that defendant was lured into this sale. Indeed, on cross-examination, the defendant admitted that she freely agreed to become involved in this transaction (Tr. 79):

"Q. And, he [Askins] wanted you to sell them [the pills] and you agreed to do it, is that right?

"A. Yes, sir."

Additionally, the defendant was at no time asked by the agents to give them the pills. At the conclusion of some small talk, the defendant turned to her mother and said, "Hand me the stuff." (Tr. 12) Clearly the evidence does not reflect that the defendant was lured into this sale.

■ The evidence having been insufficient to raise the defense of entrapment, there did not exist any burden on the State to rebut the defense. We find this proposition to be without merit.

■ The second proposition raised is that 63 O.S.1971, § 2–401(B)(1) is unconstitutional because it is an invasion of judicial power by the legislative branch. This proposition is also without merit. In Black v. State, Okl.Cr., 509 P.2d 941 (1973), we upheld the constitutionality of this statute against the same charge, using the following language:

"In conclusion, we observe that the provision of Title 63 O.S.1971, § 2–401, which prohibits the suspension of a sentence upon conviction of the sale of the enumerated items is constitutional. We further observe that such prohibition does not represent an encroachment upon the Judicial Branch by the Legislature, nor does the same violate the Fifth, Eighth, or Fourteenth Amendments to the Constitution. . . ."

In conclusion, we observe that the record is free of any error which would justify modification or reversal. The judgment and sentence is, accordingly, affirmed.