Reynaldo GOMEZ, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–837.

Court of Criminal Appeals of Oklahoma.

May 17, 1977.

Rehearing Denied June 6, 1977.

Charles W. Stubbs, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., James W. McCann, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Reynaldo Gomez, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court, Washita County, Case Number CRF–75–73, with the crime of Unlawful Delivery of Marijuana. Punishment was assessed at a term of two (2) years in the custody of the Department of Corrections of the State of Oklahoma and a fine of One Dollar ($1.00). From a judgment and sentence in accordance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence presented at trial is as follows: Washita County Deputy Sheriff James Cookerly testified that on the afternoon of November 7, 1975, he and other officers were involved in an investigation concerning the sale of marijuana in the Sentinel area and during said investigation met with Steve Frye and gave him $26.00 with which to purchase marijuana. He then identified Exhibit 1 as being part of the money he gave to Frye, basing his identification upon the serial numbers. Frye then entered the house next door occupied by Deena Coburn and Travis Wade Ralls and remained in the house for approximately twelve minutes. During this interval, Cookerly observed Ralls leave the house and return within ten minutes. Shortly after Cookerly observed a clear cellophane bag being tossed out a rear window of the house. Frye then left the home, picked up the bag and brought it directly to Cookerly. The witness performed a field test on the contents with positive results for marijuana. The bag and contents were then sealed and sent to a laboratory for analysis.

Steve Frye, a 16 year old boy, testified that he was then staying at the Diagnostic Evaluation Center in Sand Springs because he had stolen a drill and circular saw. He further related that on November 7, 1975, Officer Cookerly came to his house and gave him some money to purchase marijuana. The witness then went next door and asked Deena Coburn to purchase some and gave her all of the money. She returned shortly and gave him a bag of marijuana. He then told her he was going to hide the bag in the bathroom, went in the bathroom and threw it out the window. He then left the house, picked up the bag and gave it to Officer Cookerly. On cross-examination Frye stated that the officers did not compel him to make a purchase and that the plan had been prearranged. On redirect examination he further testified that he never mentioned the name "Gomez." However, Deena Coburn stated that she would get some from "Big Ray", who Frye identified as the defendant.

Travis Wade Ralls then testified that on the day in question Steve Frye came over and asked Deena Coburn to buy some marijuana for him. Coburn then gave the witness $15.00 and told him where to go to make the purchase. He then went to the home of the defendant some two blocks away, met him on the front porch and asked if he had a bag to sell. Gomez agreed and they went inside. The witness gave the defendant the money in exchange for the bag and he then returned to his house and laid the bag on the coffee table.

On cross-examination the witness testified that Frye picked up the bag and left. He did not see Frye throw the bag out the window. He further stated that the defendant was alone in his house when the purchase was made but that there were people outside and on the porch. He further testified that he was taken into custody shortly thereafter for having marijuana on his person, that charges had never been filed but that no promises had been made by the District Attorney.

Undersheriff Ron Mazurek then testified that on the afternoon of November 7, 1975, he and Officer Larry Williams set up a surveillance from which location they could see both the Coburn-Ralls house and the defendant's house. From their vantage point they saw Frye leave his house and enter the house next door and then watched as Ralls went to the defendant's house, go in and shortly come out and return. Within two or three minutes Frye came out and went back to his house. On cross-examination he stated that he observed no one on the defendant's front porch while Ralls was there and that all Frye was told to do was to go next door and tell one of the occupants that he wanted some marijuana.

Officer Larry Williams then testified to substantially the same acts as Mazurek concerning their surveillance of both homes. He further testified that he and Sheriff Cooper went to the defendant's house later that afternoon, Cooper to the front door and the witness to the back door. As he stood at the back door, he heard Sheriff Cooper identify himself and state why he was there. They both entered the residence and Williams smelled an odor that he associated with marijuana. He identified the defendant as one of the occupants of the house and stated that he delivered the evidence envelope containing the bag of marijuana to the laboratory in Weatherford.

Washita County Sheriff Harold Cooper then testified that after interviewing Wade Ralls he proceeded to the defendant's house and arrested the defendant. He then identified the $15.00 taken from the defendant's pocket as being on the list of marked bills previously identified.

The State subsequently called Pedro Huerta, Jr., a professor of medicinal chemistry employed by the Custer County Crime Lab who testified that he ran some tests on the contents of State's Exhibit 3 and found it to be marijuana. The bag of marijuana was then admitted into evidence and the State rested.

The first defense witness was Juan Hernandez who testified that he was the defendant's brother-in-law and that on the day in question he was in the Coburn-Ralls house when Steve Frye came in and had a conversation with Deena Coburn. He then observed Coburn give Ralls some money and tell him "go to the store and buy something." Ralls was gone approximately five minutes and returned. The witness did not see Ralls with any baggies. He further stated that Frye told him that he had given Deena $20.00 for sexual services and that Frye picked up some marijuana from a small jar on the coffee table, walked into the bathroom and then left. He then stated that Frye's reputation for truth and veracity was "not very good."

The defendant testified that on the 7th he was home with his two sons when Wade Ralls came over to repay some money that he owed the defendant. He stated that he sold no marijuana to Ralls or anyone else and that no one was smoking marijuana in the house.

The defense then called seven witnesses who testified to the defendant's good reputation in the community for truth and veracity and to the poor reputation of Frye.

Dwayne Ingram then testified that he was in the defendant's home when a young boy came in and told the defendant he would like to pay him some money which he had owed for a long time. The defendant put the money in his wallet and the boy left. He further testified that nothing was mentioned about marijuana and that he saw none. He further stated that he was in the home when the officers arrived and that Sheriff Cooper walked in with a shotgun and made everyone lie on the floor. All parties were arrested but no charges had ever been filed against the witness.

The defendant's wife then testified that she was away from the home when the arrest was made and that when she returned she was not allowed in her house and officers were holding shotguns on several persons. She further stated that there had never been any marijuana in the house to her knowledge. She further related that subsequent to the arrest she had occasion to talk to Steve Frye and that he told her, "Mrs. Gomez, I didn't want to do nothing to hurt nobody, but they made me do it." He also told her that all the marijuana had been at the Coburn house. She further related a subsequent conversation with Wade Ralls wherein he told her the following:

"They made me do it. They said if I said that against Ray they'd drop all charges against me. If I don't then I get a year. Why, I don't know, but if they catch Ray they'll let me go, if I don't, they'll give me 25 years for perjury."

Each of the defendant's sons then testified that they were both in the home when Wade Ralls came over and gave their father some money. They both stated that they had never seen marijuana around the house. After the testimony of another character witness the defense rested.

The State's first rebuttal witness, Sheriff Cooper, then testified that when he knocked on the defendant's door and identified himself he heard movement inside the house and words to the effect that "the cops were here." When he tried to open the door it was being held shut. After he entered he told everyone to lie flat on the floor and all were handcuffed. He further stated that when he entered he detected the strong odor of marijuana in the house and observed an ashtray on the coffee table with some smoke still curling up from its contents and a "roach clip" in it. The roach clip contained the remains of a marijuana cigarette.

Officer Cookerly then identified the ashtray, roach clip and cigarette remains and testified that he bagged the items which were stored in the sheriff's vault until the afternoon of the trial when they were taken to the lab for tests. Pedro Huerta, Jr., then testified that he analyzed the contents of the partial cigarette and that it contained marijuana. After the exhibits were admitted into evidence, the state rested.

The defendant, his wife, Dwayne Ingram and the defendant's son then each testified on rebuttal that they recognized the ashtray but had never seen the roach clip or the remains of the cigarette. His son further testified that he had tried to hold the door shut when he observed Cooper with a gun and no badge trying to force it open. He let the door open when Cooper threatened to shoot.

The defendant's first assignment of error contends that there was insufficient evidence presented at trial to sustain a conviction for the reason that the state failed to prove beyond a reasonable doubt that the baggie of marijuana field tested by Cookerly came from the defendant. In support of his contention the defendant argues that the testimony of Frye shows that the baggie which he threw out the bathroom window was delivered to him by Deena Coburn while the testimony of the officers and Ralls indicates that the substance was purchased and delivered back to the Coburn-Ralls house by Wade Ralls.

We have long held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged this Court will not interfere with the verdict even though there is a conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Williams v. State*, Okl.Cr., 557 P.2d 920. In the instant case the jury, based upon competent evidence presented, determined that the marked bills which Frye gave to Deena Coburn were given to the defendant by Ralls in exchange for the baggie of marijuana. Although there was a conflict between the testimony of Frye and Ralls concerning who left the home to make the purchase, said conflict may be resolved by the jury. The defendant's first assignment is without merit.

The defendant's second assignment of error urges that the trial court committed reversible error in permitting the state to show upon rebuttal that the defendant had marijuana in his house by introducing the roach clip and the testimony of rebuttal witnesses, since the introduction of such evidence tended to prove the commission of another crime for which the defendant was not on trial. We disagree.

■ The defendant, his two sons and wife all testified that they had never seen marijuana in the house and the defendant specifically testified that no one was smoking marijuana that day. The evidence presented on rebuttal was properly admissible in order to contradict and disprove the testimony of the defendant and his family members. *Shirley v. State,* Okl.Cr., 520 P.2d 701.

In *Parker v. State,* Okl.Cr., 253 P.2d 1085, this Court held that when a defendant elects to testify in his own behalf he puts his credibility as a witness in issue the same as any other witness. In the instant case the testimony of the defendant included a denial of any marijuana being smoked and was properly the subject of rebuttal.

■ The defendant next urges that error was committed when the chemist was allowed to testify concerning his analysis of the remains of a cigarette found in the roach clip when the remains were not produced and admitted into evidence. It is apparent from the testimony that the small amount of substance found in the roach clip was consumed during the testing. However, we do not feel that the failure to retain a minute quality for introduction into evidence constitute error which is prejudicial to the defendant. The expert was available for cross-examination and the evidence was admitted for rebuttal purposes only. The error, if any, is harmless.

The defendant's third assignment of error urges that the trial court committed reversible error by denying the defendant's motion for a continuance by reason of the absence of the witness Deena Coburn. The record reflects that defense counsel personally served a subpoena upon the Ms. Coburn on March 25, 1976, four days prior to trial, that she failed to appear at trial and that defense counsel made an oral motion for continuance which was overruled by the trial court. The record does not reflect that defense counsel complied with the requirements of 12 O.S. § 668 which provides in part that the party moving for a continuance must set forth in affidavit form facts showing the materiality of the evidence expected to be obtained.

The transcript shows that upon making the oral motion defense counsel made an offer of proof concerning the nature of the missing witness's testimony. According to the offer of proof Deena Coburn would testify that Steve Frye came to her home and gave her the sum of $20.00, that she then gave $15.00 to Wade Ralls who left and said he was going to the store, that there was no conversation at all concerning marijuana, that when Ralls returned shortly thereafter he did not bring any marijuana with him, that she observed Frye take a package of marijuana from a tray on the coffee table and that Ralls always kept large quantities of marijuana inside the house. After the conclusion of the rebuttal testimony, the motion for continuance was again renewed and the trial court overruled same stating that the testimony of the missing witness as stated in the offer of proof would have been cumulative to that of the witnesses who had testified.

■ In *Turner v. State,* Okl.Cr., 497 P.2d 456, the Court held in a similar situation where no affidavit was prepared and presented that an application for continuance is addressed to the sound discretion of the trial court and that a conviction will not be reversed because a trial court overrules such an application unless a manifest abuse of discretion appears. See also *Harrison v. State,* Okl.Cr., 461 P.2d 1007. In the instant case we do not feel that the trial court abused its discretion. The offer of proof was essentially cumulative to the testimony of Juan Hernandez and the defendant failed to prepare and present the necessary affidavit. It should also be noted that

the offer of proof gave no indication as to when, if at all, the defense witness might be able to testify. The defendant's third assignment is without merit.

■ The defendant's next assignment of error urges that the trial court committed reversible error in admitting the roach clip into evidence since it was the fruit of an illegal search. We disagree. The record reflects that there was no search of the defendant's home at the time of his arrest. The roach clip which was in plain view in an ashtray on the coffee table was subject to seizure and introduction into evidence. See *Morris v. State,* Okl.Cr., 507 P.2d 1327.

The defendant's next assignment urges that the verdict was illegal for the reason that the jury foreman failed to sign the verdict form before he handed it to the trial judge. It would appear from the record that the trial judge noted that the foreman had forgotten to sign the verdict and that it was signed in the courtroom.

■ The defendant fails to support his contention by citation of authority. As stated in *Bryant v. State,* Okl.Cr., 478 P.2d 907, where a defendant fails to support his contentions by both argument and citations of authority and it is apparent that the defendant has been deprived no fundamental rights this Court will not search the books for authorities to support the mere assertion of error. In the instant case it is our opinion that the signing of the verdict by the foreman in the courtroom, if error at all, was harmless error of the provisions of 20 O.S. § 3001. The assignment is meritless.

■ The defendant's next assignment of error urges that the conviction was based upon perjured testimony and therefore cannot stand. Again we must disagree. As stated in numerous cases the credibility of witnesses is within the exclusive province of the jury. In the instant case the jury weighed the evidence before it and upon due deliberation determined the facts against the defendant and returned the appropriate verdict. Said assignment of error is also without merit.

The defendant's last assignment of error contends that the trial court committed reversible error in failing to instruct on the defense of entrapment and to submit other proper instructions.

■ In *McCart v. State,* Okl.Cr., 435 P.2d 419, this Court held that the defense of entrapment is not available where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent. In the instant case there is no evidence presented by the State or the defense to indicate that Steve Frye ever mentioned the name of the defendant or indicated that marijuana should be purchased from him. Wade Ralls or Deena Coburn made the decision to go to the defendant's home and furnished the defendant an opportunity to act. Since no facts were presented at trial which give rise to the defense of entrapment, the trial court did not err in refusing to give an entrapment instruction. See *Lehman v. State,* Okl.Cr., 536 P.2d 1326. See also *Batie v. State,* Okl.Cr., 545 P.2d 797, wherein we held that the trial court should not instruct upon any degree of crime or any theory of defense which is not supported by the evidence.

The defendant argues that Instruction 6, which reads as follows:

"There has been some evidence offered in this case as to the good reputation of the defendant in the vicinity in which he resided.

You will consider this evidence with all the other evidence in the case, and give it such weight as you deem it entitled to have.

But if you find beyond a reasonable doubt that the defendant is guilty as charged, it becomes immaterial what the defendant's reputation as to being a peaceable, law abiding citizen may have been heretofore."

was not adequate on the issue of reputation and character.

The record indicates thaw the defendant failed to submit a requested instruction on reputation and character as a defense. In *Schapansky v. State,* Okl.Cr., 478 P.2d 912, this Court held that where defense counsel is not satisfied with instructions that are given, or desires the trial court to give a particular instruction, or to more definitely or sufficiently state any propositions embraced in the instructions, it is the duty of defense counsel to prepare and present to the trial court such desired instructions and request that they be given and in the absence of such a request this Court will not reverse a case of instructions generally cover the subject matter of inquiry. See also *Vester v. State,* 76 Okl.Cr. 235, 136 P.2d 205. In the instant situation it is our opinion that Instruction 6 generally covers the subject matter and that no error was committed.

The defendant further argues that the trial court erred in failing to submit an instruction as to the right and credibility to be given to an expert witness. Again the record reveals no request for such an instruction. In *Peterson v. State,* Okl.Cr., 473 P.2d 293, in a case where defense counsel also failed to request such an instruction this Court, stating that the jury might have placed much importance on the testimony of a chemist, modified the judgment and sentence appealed from. In the instant case the same rational would apply especially with reference to the testimony of the chemist concerning the contents of the partial cigarette found in the roach clip.

However, as stated in *Peterson, supra,* the failure to give the expert witness instruction when not requested does not require reversal and we will not modify since the minimum punishment was assessed.

The judgment and sentence appealed from is *AFFIRMED.*

BUSSEY, P. J., concurs.

BRETT, Judge, dissents:

I respectfully dissent to this decision for the reason I fail to find sufficient connection between the defendant and the alleged marihuana; and, because the chain of custody of the contraband is not sufficiently shown. Likewise, I believe the defendant was entitled to a continuance because of the absent witness. It was not until time for trial that defense counsel learned that the witness was not present.

I recommend to counsel to apply for a suspended sentence under the provisions of 22 O.S. 1971, § 994.